## SUPREME COURT.

THE PEOPLE OF THE STATE OF NEW YORK agt. THE NEW YORK FLOATING DRY DOCK COMPANY.

*Taxation, under chapter 542 of the Laws of 1880 — The act not unconstitutional — When it became operative.*

The builder and repairer of vessels is a ship carpenter or ship builder, and not a manufacturer, within the meaning of the term "manufacturing corporation," as used in chapter 542 of the Laws of 1880, section 3.

The act in relation to the taxation upon certain " corporations, joint-stock companies and associations," for the use of the state (*Laws of* 1880, *chap.* 542), is not unconstitutional.

In the imposition of taxes by such act, the first period under the act must be from first Monday in November, 1879, to first Monday in November, 1880. The word " hereafter," as used in the act, includes the year of the passage of the act.

*Albany Circuit, May*, 1882.

*L. W. Russell*, attorney-general, and *James A. Dennison*, deputy attorney-general, for plaintiffs.

*E. N. Taft*, for defendant.

WESTBROOK, *J.* — This is an action brought by the people, under chapter 542 of the Laws of 1880, to recover the taxes claimed to be imposed by such act upon the defendant for the year ending November 1, 1880. It was tried before the court

without a jury, and in regard to the facts there is no dispute.

The defendant was created a corporation by chapter 170 of the Laws of 1843, " for the purpose of constructing, using and providing one or more dry docks, or wet docks or other conveniences and structures, for building, raising, repairing and coppering vessels and steamers of every description."

The defendant on the 9th day of November, 1880, paid its taxes levied under the general laws of the state, amounting to $869.05, It also furnished to the comptroller of the state the information required by said act of 1880, protesting, however, that it was not liable to be taxed under such act. To the maintenance of the action several objections are made, which will be at once briefly stated and considered.

*First.* It is insisted that the defendant is a manufacturing corporation and, therefore (*see sec.* 3), chapter 542 of the Laws of 1880 is not applicable to it.

It is undeniable that if the defendant is what it claims to be, a manufacturing corporation, that this action cannot be maintained. Is it " a manufacturing corporation ? "

The precise character of the business conducted by the defendant was not shown upon the trial. It is assumed, however, that its business is what its charter states, and which has already been given. It was created (repeating again the language of its act of incorporation) " for the purpose of constructing, using and providing one or more dry docks, or wet docks or other conveniences and structures, for building, raising, repairing and coppering vessels and steamers of every description." It is, therefore, empowered : 1st. To construct " one or more dry docks, or wet docks or other conveniences and structures," for the purpose of the act. 2d. To use them when constructed for those purposes; and, 3d. To provide them for the purposes of the act, that is, to furnish them for use by others for the purposes for which they were constructed.

It certainly would not be in accordance with the general meaning of the words to style a corporation which builds one

or more docks, or other structures for use by itself or others, a manufacturing company merely because it constructed them for such use. We understand by a manufacturer one who is "engaged in the business of working raw materials into wares suitable for use" (*Webster's Dictionary*). The making of "one or more dry docks" cannot be said to be "the business" in which the defendant was "engaged." Their construction was not "the business" of the corporation. That part of the work was preliminary to its actual business, and was only the production of conveniences and appliances which, when constructed, were to be used to carry on its real business, which was the use of such conveniences and appliances, either by itself or others, in "building, raising, repairing and coppering vessels and steamers of every description." Very clearly, also, the construction of one or more dry docks to be let to others, who were to use them in building and repairing vessels, did not make the owner of the docks a manufacturer any more than constructing a building for a factory, which, when constructed is to be leased to others, makes such owner a manufacturer. If, however, the defendant was to carry on and did carry on for itself the business of constructing and repairing vessels, did it thereby become a manufacturing corporation?

Undoubtedly, using the words — manufacture, manufacturer — in their broadest sense, the builder and repairer of a vessel, or a house even, might be called a manufacturer. In either case such builder takes the raw material, and by the hand, or by machinery and tools, fashions it into form and shape for use. But this is not the ordinary and general meaning to be given to the words, and it is such general and ordinary meaning which words are to receive in the construction of statutes (*Potter's Dwarris on Statutes*, 193). The builder and repairer of vessels is a ship carpenter or ship builder; his business is ship carpentry, and he and his business are so styled in common speech, and he is no more a manufacturer, and his business no more manufacturing, than

is a house carpenter a manufacturer, or his business manufacturing. In no ordinary and general sense can either a ship carpenter or house carpenter be said to be "engaged in the business of working raw materials into *wares* suitable for use" (see definition of manufacturer above quoted), and the calling a vessel a ware would certainly strike the average hearer as a strange designation.

This point of the defendant is, therefore, overruled, and and the next one will be now considered, which is,

*Second.* The act is unconstitutional, because, as its title indicates, it levies "taxes for the use of the state upon *certain* corporations, joint-stock companies and associations, and not upon *all* alike.

The principle upon which this objection rests is undoubtedly sound, and the answer to the point is to be found, not in the dispute of such principle, but in its applicability to the facts of this case. The state certainly cannot lawfully undertake to impose the burdens of taxation upon a few, and exempt others (*Gordon* agt. *Cornes et al.*, 47 *N. Y.*, 608, 611, 612; *Stuart* agt. *Palmer*, 74 *N. Y.*, 183, 189), and any law which professedly and clearly made such an attempt could not be upheld. While, however, this is true, it is also true that "the power of apportionment is included in the power to impose taxes, and is vested in the legislature; and in the absence of any constitutional restraint, the exercise by it of such power of apportionment cannot be reviewed by the courts" (*Per* Rapallo, *J.*, in *Gordon* agt. *Cornes et al.*, 47 *N. Y.*, 611). The act in question does not profess to tax certain corporations for the support of the state and to exempt others. It simply declares how and in what way taxes shall be assessed and collected upon and from "certain corporations, joint-stock companies and associations," leaving those which are not taxed thereunder to the operation of other statutes. There is no provision in the constitution of the state which requires uniformity in legislation upon this subject, and hence it is in the power of the legislature to determine the methods

and mode of taxation, and it is also no objection to a law that it does work injustice in particular cases, as all human laws must do (*Cooley on Taxation*, 160; *Bank of Commerce* agt. *New York City*, 2 *Black* [*U. S.*], 620, *see* 630, 631).

Neither should it be overlooked that the act under consideration, while it provides the mode of levying the tax upon "certain corporations," etc., by its eighth section exempts "the capital stock and personal property of said corporations, joint-stock companies and associations * * * from assessment or taxation, except as in this act prescribed." The extent of this exemption, whether it relates to other taxation for state purposes only, or to other taxation for any purpose, has been limited by two general term decisions of this court (*People* agt. *Davenport*, 25 *Hun*, 630, *judge* DYKMAN *dissenting*; *People* agt. *Commissioners of Taxes*, 26 *Hun*, 446) to the former. But even with this limitation upon its language, it does confer a substantial exemption from taxation other than is imposed by said act.

The question then presented really is, must a law of the state which imposes taxes in a manner therein specified upon "certain corporations, joint-stock companies and associations," and which does not exempt others from taxation, but leaves them to be taxed under other laws, be held unconstitutional for the simple and only reason that the methods of ascertaining the tax thereby imposed and its collection are peculiar to itself? In other words, must all corporations be taxed by and under one law, without regard to the character of their business, and to the fact that such law might, in its practical working, owing to such difference of pursuit, not secure equality of burdens? These questions can only admit of a negative answer. It is for the legislature to determine the mode and manner of taxation. So long as there is no attempt to apportion taxation unequally, a statute cannot be pronounced unconstitutional, upon the sole ground that it prescribes the method of taxation in certain cases, and does not make the same method applicable to all. The law-making

power of the state, unrestrained as it is by the constitution, must be left free to exercise its functions, and if, in its wisdom, it has determined that equality of public burdens is best secured by a want of uniformity in its methods, the courts are powerless to interfere.

*Third.* The defendant also contends that in the imposition of taxes by such act, " the first period under the act must be from November (first Monday), 1880, to November (first Monday), 1881, and not from November (first Monday), 1879, to November (first Monday), 1880."

It will not be necessary to discuss this point at any considerable length. The act was passed June 1, 1880, and took effect immediately. The precise year when the tax is to begin thereunder is not stated. The first word in the acts is " *Hereafter*," and that is followed by a provision making it the duty of the president or treasurer of the corporation, liable to be taxed by section 3 upon its capital stock, to report " in writing to the comptroller, *annually* on or before the fifteenth day of November, stating specifically the amount of capital paid in, the date, amount and rate per centum of each and every dividend declared by their respective corporations, joint-stock companies or associations during the year ending with the first day of said month." The act repeats in several places the expressions " the year ending as aforesaid," and " in each year," and in the third section it speaks of " any year ending with the first Monday in November." All these expressions were intended to designate the years during which the tax should be imposed, and the point in the discussion is, to what years do they refer, or rather, what is the first year the tax becomes operative ? As has already been stated, the first word in the statute is " Hereafter." From the point of time designated by that word the machinery of the act takes effect. The contention of the attorney-general is, that in using the word " Hereafter," the legislature intended that from the date of the passage of the act (June 1, 1880), it should take effect. On the other hand, the contention of

the defendant is, that the true construction of the act requires that the word " Hereafter" should be held to refer to the years which succeed the one during which the act was passed, and do not include the year of its actual passage, so that the taxation thereby imposed must begin with the year which succeeded the one during which the act became a law.  In other words, the taxation imposed is for the years " Hereafter," that is, the years which follow the year of the passage of the act.

This question is substantially similar to the one decided in *The People* agt. *The National Fire Insurance Company* (61 *How.*, 334), and which arose under the fifth section of the act.  In that case, the judge writing this opinion held that the word "Hereafter," with which that section also begins, had reference to the years which succeeded the year of its passage, and did not include the year of such passage.  It was so held because the giving force and effect to every word of the section required that construction, and also because the other construction would impose a tax upon the defendant during a period of time for which it had already been taxed.  The same reasoning applies to this case.  The defendant has actually been taxed for the period of time, which this action, in part at least, covers, and while the legislature is not prohibited from taxing it again for the same period, the act should not be construed so as to have that effect unless its language requires it.  For the reasons given in *People* agt. *National Fire Insurance Company*, and which are applicable to this case, I should hold with the defendant upon this point, if my own judgment was followed.  The general term has, however, overruled the decision made by me in the case referred to, and reversed the judgment therein rendered at the circuit.  Following the decision of the general term, and not my own views, which are entirely unshaken, this point must also be overruled.

Each question raised by the defendant upon the trial having been examined, and answered against it, it follows that the

plaintiffs are entitled to judgment in the action, with costs. The attorney-general will prepare findings, which will be settled on notice to the defendant's attorneys.