# Richmond

## MORRIS AND CO., INC. V. COMMONWEALTH.

### November 12, 1914.

1. TAXATION—*Merchant's License—Tax on Manufacturers—State Policy.*—Except as provided by section 135 of the Code no merchant's license is required of a manufacturer, whether resident or non-resident, upon articles manufactured by him. The policy of the State, as clearly appears from our tax laws, is to encourage manufactures within its limits, to induce them to come into the State and to establish their plants and thereby contribute to the general prosperity of the State, and hence there is no general provision in the tax laws for a tax on manufacturers other than a tax on their capital.

2. TAXATION — *Non-Resident  Packers—Manufacturers—Butchers—License.*—Under the tax laws of this State imposing a license tax on merchants, graduated in amount by their actual purchases during the preceding twelve months, a non-resident pork packing company, which does not sell in this State pork or beef slaughtered by it, but only sausage, head cheese, mince meats and other like products produced by it, and articles purchased by it from others, is not liable to the license tax imposed by section 45 of the tax bill as to such articles manufactured by it. As to such articles it is a manufacturer and not a merchant, and the license tax, which includes butchers, is to be graduated by its "actual purchases."

3. MERCHANTS—*Definition.*—A merchant is one whose business is to buy and sell merchandise, and the term embraces all persons who habitually trade in merchandise.

Error to a judgment of the Corporation Court of the city of Roanoke.

*Reversed.*

The opinion states the case

*Hall & Woods* and *Eppa Hunton, Jr.,* for the plaintiff in error.

*John Garland Pollard, Attorney General,* and *Christopher B. Garnett, Assistant Attorney-General,* for the Commonwealth.

Cardwell, J., delivered the opinion of the court.

Morris & Company, Inc., a non-resident corporation, qualified in accordance with section 1104, Code of 1904, to do business in Virginia, owns and operates packing houses at Chicago, Ill., Kansas City, Mo., and other cities, its business being purchasing live stock, slaughtering the same, and from the carcasses manufacturing and preparing for sale various food products, as well as the fresh meat. It disposes of these products through distributing houses at various points, one of these being located in the city of Roanoke, Va. There is sold "sausage, head cheese, mince meats, canned meats, bacon, smoked meats, oleomargarine and lard manufactured by it," but did not sell the fresh meat. The sales of its own products through its branch house at Roanoke during the twelve months next preceding the 30th of April, 1913, amounted to as much as $40,000, and in addition it sold other articles not manufactured by it but purchased on the market from other houses during the twelve months mentioned, amounting to the sum of $20,975.47. The corporation applied for a merchant's license for the year beginning May 1, 1913, and reported its purchases during the preceding year as amounting to the sum of $20,975.47, but did not include in its purchases reported the value of the articles of food produced by it at its various packing houses without this State, and disposed of through its branch house at Roanoke, and for its failure to report the sales of its own products it was indicted in the Corporation Court of Roanoke city for having "fraudulently procured its license to do business as a

58

merchant" for the year beginning May 1, 1913, in violation of section 45 of the Tax Law—Code, 1904, p. 2220. The case upon an agreed statement of facts having been submitted to the court for decision, without the intervention of a jury, the court entered its judgment finding the accused guilty, and imposed upon it a fine of $50.00, to which judgment this writ of error was awarded.

A decision of the question presented turns upon the proper construction of sections 45 and 46 of the Tax Law, *supra.* These sections, so far as necessary to be quoted, are as follows:

"45. Every merchant shall pay a license tax for the privilege of transacting business in this State, to be graduated by the amount of purchases made by him during the period for which his license is granted. To ascertain the amount of purchases, it shall be the duty of such merchant, on the first day of April of each year, or within ten days thereafter, to make report in writing under oath to the commissioner of the revenue for the district for which he was licensed, showing the amount of goods actually bought by him during the next preceding twelve months. . . . Any person violating the provisions of this section shall pay a fine of not less than thirty dollars, nor more than one thousand dollars, for each offense.

"46. For every license to a merchant or mercantile firm or corporation engaged in the business of a merchant, the amount to be paid shall be graduated as follows: If the amount of purchase shall not exceed one thousand dollars, the amount shall be five dollars. . . The sums imposed under and by virtue of this section shall be in lieu of all taxes for State purposes on the capital actually employed by said merchant or mercantile firm or corporation in said business, except the registration fee and franchise; and except, etc. . . . .

Marchant tailors, lumber merchants, furniture merchants, butchers, green grocers, hucksters, dealers in coal, wood or ice shall be embraced in this section; . . ."

The contention of plaintiff in error is that it was not required by the statute, *supra,* to report to the commissioner of the revenue, as "purchases" made by it, any of its products coming from its own packing houses, but that it should only return the products purchased from other houses, and that its license fee should be graduated and fixed accordingly. On the other hand it is contended for the defendant in error that when goods are sent from plaintiff in error's central packing hauses to its branch distributing houses, such transaction should be denominated a "purchase" by the distributing branch receiving such goods, within the meaning of the tax law; but if this court be unable to sustain that view, then the court, in order to be fair to resident butchers, must go one step further and denominate the original transaction wherein the company bought the live stock on the hoof as a purchase, and said company should be required to pay license taxes according to those purchases, for it does not, and cannot be made to, pay a tax on its capital as a manufacturer.

This latter contention is without merit. The Tax Law, sec. 46, *supra,* classes butchers as merchants and requires them to take out a license as a merchant, while plaintiff in error, from the agreed facts in the record, is not conducting a butcher's business in this State according to the common acceptation of the meaning of the term "butcher" as used in the statute. Doubtless if a butcher, as that term is ordinarily understood, should make his purchases and slaughter his animals outside of the State and only bring his fresh meats into the State and offer them for sale, the question might arise as to whether or not he should be required, under the Virginia statute, to

take out a merchant's license based upon a report of his purchases, as required by the statute, including the animals purchased and slaughtered outside of the State, but that is not the case here. Plaintiff in error, according to the agreed statement of facts, did not sell at Roanoke fresh meats—like fresh beef and fresh pork—but a complete list of the articles it did sell is as follows: "Sausage, head cheese, mince meats, canned meats, bacon, smoked meats, oleomargarine, and lard, manufactured by it."

In this State manufacturers are not required to pay a license tax, but are required to pay a property tax on the capital invested in their business, and the opinion of this court in *Consumers Brewing Co.* v. *Norfolk,* 101 Va. 173, 43 S. E. 336, clearly defines a manufacturer, and draws the distinction between a manufacturer and a seller; the definition of the term "manufacturer" there given being in accord with that given by lexicographers and with the very great weight of authority on the question of who are manufacturers, and the distinction between manufacturers and merchants.

A well considered and instructive case in point is that of *Engle* v. *Sohm,* 41 Ohio St. 691, 52 Am. Rep. 103, in which it is held that a pork packer is a manufacturer and not a merchant, within the meaning of the term "manufacturer" as used in tax and revenue laws. The court in its opinion says: "The occupation of the defendants in error was, we think, essentially that of manufacturers. By the use of tools, implements and mechanical devices; by subjecting the slaughtered animals to divers processes, running—some of them—through several months; by a combination with various materials and ingredients requiring skill, care and attention, products were obtained in the form of pork, lard and cured meats, to which may appropriately be applied the term 'manu-

factured articles.' The original substance, though not destroyed, was so transformed through art and labor that without previous knowledge it could not have been recognized in the new shape it assumed, or in the new uses to which it was applied. One who produces such results may as correctly be designated a manufacturer as he who buys lumber and planes, tongues, grooves, or otherwise dresses the same, or as he who by a simple process makes sheets of batting from cotton; or as he who buys fruit and preserves the same by canning—all of whom have been held to be manufacturers, and taxed as such under the internal revenue laws of the United States." See also note to the case as reported, *supra.*

The case of *People, etc.* v. *Roberts,* 155 N. Y. 408, 50 N. E. 53, 41 L. R. A. 288, is cited for the prosecution in this case as holding a contrary view to that taken in the case from which we have just quoted, but in the case last mentioned not only was the business dealt with essentially different from the business now carried on by the modern packing houses, but there the court was dealing with a question of exemption from taxation under a statute expressly exempting manufacturing plants, and hence a different rule of construction applied.

It is not questioned in the case at bar that the legislature, if it saw fit to do so, might require manufacturers to pay a license tax based on the amount of the sales of their products, or on the amount of their purchases of raw materials, or on any other basis that would be equal and uniform, but the question here is, whether or not the legislature has imposed any license tax at all upon manufacturers for the sale of their own products. The policy of the State, as it clearly appears from our tax laws, is to encourage manufacturers within its limits, induce them to come into Virginia and establish their plants and thereby contribute to the general prosperity

of the State, hence there is no general provision in the tax laws for a tax on manufacturers other than a tax on their capital.

Immediately following sections 45 and 46 of the tax law, which are quoted above, is section 47, p. 2222, providing that every railroad company or other incorporated company which sells any mineral or forest product, or any other article, is required to be taxed as other merchants dealing in like commodities, and the act is made to apply to companies keeping commissaries or having the agency for the sale of any article other than their own product, but the act contains also this important and significant provision: "nothing in the foregoing shall be construed as requiring a company selling the products of their own mines or lands or manufactures to pay a merchant's license for so doing." Clearly the language of this statute imposes no tax upon the manufacturer, certainly not upon a resident manufacturer, for the sale of its products, but has by negative words excluded the idea that it is liable to pay a merchant's license for so doing. So that defendant in error, to maintain the proposition that plaintiff in error is liable for the payment of a merchant's license tax on the sale of its own products at its Roanoke branch house, has to rely upon section 45 of the tax law, which by its terms graduates the merchant's license tax only on goods "actually bought," while section 47, just referred to, when imposing a tax on incorporated companies for selling things expressly provides: "nothing in the foregoing shall be construed as requiring a company selling the products of their own mines or lands or manufactures to pay a merchant's license for so doing."

While plaintiff in error is a foreign corporation and as such is not authorized to do business in this State, it has been, pursuant to our laws, domesticated in the State

and authorized to do business in it, and is under the protection of the Constitution and laws of the United States
and cannot be discriminated against in favor of resident
manufacturers, but stands upon exactly the same footing as resident manufacturers, a proposition which is
not controverted in this case. In fact, no intention appears in our tax laws on the part of the State of Virginia to require a merchant's license of a manufacturer,
whether resident or non-resident, upon its products, except as to certain specified articles, as provided in section 135 of the Code, to-wit, sewing machines or manufactured implements, and any resident manufacturer,
who has paid taxes on his capital, may sell his products,
unless it is sewing machines or manufactured implements, anywhere in the State, and any foreign incorporated company, which has been permitted by the State
Corpuration Commission to do business in the State and
has paid the amount required for the privilege, may do
the same thing. Here the law makes no discrimination
between resident and non-resident manufacturers; the
one pays on its capital, and the other pays for the privilege of doing business in Virginia.

Prior to 1874 merchants were assessed for taxation
upon the capital employed in their business, but in
that year the method of taxing merchants was changed
and since then they have been required to pay a license tax. *Supervisors* v. *Tallant,* 96 Va. 725, 32 S. E.
479. By this legislation merchants are required to pay
a license tax, graduated, not by what the merchant sells,
but "by the amount of purchases made by him during
the period for which his license is granted," and since
it would, of course, be impossible to determine what
amount of purchases he would make during the twelve
months for which his license is granted, the statute proceeds to fix a method by which the amount of his pur-

chases may be ascertained, as follows: "To ascertain the amount of purchases it shall be the duty of such merchant . . . to make a report in writing . . . showing the amount of goods actually bought by him during the next preceding twelve months." Section 45 of the tax law, *supra*. .

It cannot be maintained, as it appears to us, that because plaintiff in error purchased in a foreign State live stock, and from it manufactured sausage, mince meats, canned meats, lard, oleomargarine, etc., and sent these products to its distributing houses in Roanoke and there sold them, that it "actually bought" the sausage, etc., within the meaning and intent of the statute. It would seem that the legislature by using the words "actually bought" meant to exclude any idea of embracing in the report required of the merchant of the amount of purchases made by him anything except those things which were an actual purchase and not the products of his own farm, or his own mines, or such as were manufactured by him.

The legal acceptation of the meaning of the word "merchant" is one whose business is to buy and sell merchandise, and it is held to apply to all persons who habitually trade in merchandise. *Brown's Case,* 98 Va. 367, 36 S. E. 485.

When the legislature enacted section 47 of the tax law manifestly it recognized the line of demarcation between the business of the manufacturer and that of a merchant, and provided that an incorporated company in Virginia, which sells any mineral or forest product, or any other article, shall be taxed as other merchants dealing in like commodities, but provided further that nothing contained in the act should be construed as requiring a company selling the products of its own mines, lands or manufacture, to pay a merchant's license for so

doing, thus evincing clearly the policy of the act to exempt manufacturers and other producers from the payment of a merchant's license tax for the privilege of disposing of their own products. To give to section 45 of the tax law the construction that its plain and simple language imports would make it entirely consistent with the policy of the State, clearly appearing in section 47 following, while to construe section 45 according to the contention of the defendant in error in this case would, in effect, be to hold that plaintiff in error was required to pay a merchant's license tax for the privilege of selling its own manufactured products at Roanoke, notwithstanding the express provision in section 47 of the same legislative act, that it shall not be required to pay such a tax for so doing.

It is equally clear, we think, that the language used in section 45 of the tax law is not susceptible to a construction that would make plaintiff in error liable as a merchant to have its license graduated by anything except by its "purchases," that is, by the amount of its goods "actually bought," during the twelve months next preceding its application for a license to do business as a merchant at Roanoke during the license year beginning May 1, 1913, as contradistinguished from the products of its own manufacture sold at Roanoke, and it is not claimed in this prosecution that plaintiff in error made a fraudulent report of the amount of goods it "actually bought" for its Roanoke house during the preceding twelve months.

It follows that we are of opinion that the judgment of the trial court complained of is erroneous, and it will, therefore, be reversed and annulled, and this court will enter the judgment which that court should have entered acquitting plaintiff in error of the charge made in the indictment against it.

*Reversed.*