# Richmond

COMMONWEALTH OF VIRGINIA AND CITY OF RICHMOND v. LEONARD MEYER, ET ALS.

December 7, 1942.

Record No. 2590.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Abram P. Staples, Attorney General, W. W. Martin, Assistant Attorney General, Horace H. Edwards* and *Henry R. Miller, Jr.,* for the plaintiffs in error.

*Christian, Barton & Parker,* for the defendants in error.

HOLT, J., delivered the opinion of the court.

In this record are two cases—one against the Commonwealth of Virginia and one against the City of Richmond. In each relevant facts are the same, as is the law applicable thereto. By consent they were heard together, and the issues there made have been decided in one final order.

Leonard Meyer and his three brothers make up a partnership and are meat packers whose place of business is in Richmond. They have been engaged since 1926 in that business, inherited from their father. They employ about twenty-nine workmen and have now invested $177,748.53. Seemingly they are prosperous. Their methods now in use were adopted in 1935 or 1936.

They purchase hogs and cattle on the hoof—sometimes from brokers at the stockyards and sometimes direct from farmers. These purchases they take to the Union Abattoir, where they are slaughtered, and when their bodies are suffi-

ciently cooled, they haul them in their trucks to their packing house, which is equipped with appliances, suitable for shaping them into final form, some complicated and necessitating skill in their operation.

When these carcasses reach the packing house they are hung on hooks attached to trolleys running on overhead rails and are rolled into a refrigerating plant. After two or three days, and when they have been properly cooled, they are rolled out and laid on a cutting table and from the carcasses of hogs' hams, shoulders and middlings are carved out by experienced men with electric saws. What is left is made into sausages of different sorts, lard, etc., and that which cannot be so converted is sold as fresh meat. Hams and shoulders are then rolled into a curing room, where men, also experienced, with tweezers pick up arteries and push into them fine hollow needles attached to an electric pump. In this manner, and under pressure of 75 or 80 pounds, a brine made up of salt, sugar and prague powder is injected into them. The meat itself swells up and a fine spray comes out of its pores. This process is called "tenderizing" and, it is contended, breaks up the tissues. When it is completed, the meat is wrapped in salt and stacked on slats for the brine to drain off. It is then thoroughly washed, after which it is again put on trolleys and rolled into smoking rooms (three in number). They are fitted with gas burners, steam coils, thermostats, etc. This meat is smoked overnight by throwing hickory saw-dust on gas burners. Live steam is then forced into the smoke chambers, where the temperature is kept at 165 degrees and until the inside temperature of the meat is 142 degrees. These hams and shoulders are then rolled out and allowed to cool, after which they are again put into a refrigerator. When this cooling process is completed, they are taken out and wrapped for shipping with the weight marked on each package. Brine is not injected into the sides or middlings, but when they are cured they are sliced into breakfast bacon and packed in half-pound packages. From ten to twelve days are required to complete the process.

This is, in substance, the difference shown by analysis between the cured and uncured ham:

|  | Fresh Ham | Cured Ham |
|---|---|---|
| "Moisture (at 103 deg. C) | 69.86% | 51.69% |
| Ash | 1.13% | 5.20% |
| Nitrogen | 3.09% | 3.46% |
| Protein (N X 6.25) | 19.30% | 21.61% |
| Chloride AS NaCl | 0.07% | 4.46% |
| Phosphorus | 0.15% | 0.21% |
| Sugar | Trace | 0.82% |
| Reaction | Acid | Alkaline" |

The Commonwealth and the City of Richmond have assessed the taxpayer with a merchant's license tax under substantially the same form of statutes. The State tax is under section 188 of the Tax Code of Virginia, the familiar wholesale merchant's license tax section; and the city tax was under a very similar form of ordinance, section 121 of the Richmond City Code of 1937. In each of these statutes there is a provision that a manufacturer "may, without a wholesale merchant's license, sell at the place of manufacture, the goods, wares and merchandise manufactured by him." It is conceded by the counsel for appellants that if "curing hams, shoulders and bacon" is the "manufacture" of hams, shoulders and bacon, there is no basis for the license taxes claimed herein.

The question, therefore, resolves itself into the meaning of the verb "manufacture" as the word is used in section 188 of the Tax Code of Virginia and sub-paragraph (2) of section 121 of Chapter 10 of Richmond City Code of 1937, page 133.

In the order appealed from is this statement:

" * * * that the petitioner was also assessed by the Department of Taxation for the State of Virginia with additional State license taxes as a wholesale merchant and by the Commissioner of the Revenue for the City of Richmond with additional city license taxes as a wholesale merchant with respect to that portion of its business that is represented by the processing of hams, shoulders and bacon, which assess-

ments were for the years 1937, 1938, 1939 and 1940, based upon business transacted in 1936, 1937, 1938 and 1939, respectively, and which taxes assessed by the State and City were in the amounts as shown below:

|  | 1937 | 1938 | 1939 | 1940 | Total |
|---|---|---|---|---|---|
| State taxes.. | $ 88.71 | $156.35 | $186.71 | $239.31 | $ 671.08 |
| City taxes .. | $150.13 | $264.50 | $315.97 | $402.80 | $1133.50 |

no portion of which has been paid by the petitioner to either the State or the City; and that the assessments complained of were not caused by the willful failure or refusal of the petitioner to furnish the respective tax assessing authorities with the necessary information as required by law.

"Petitioner admits that if it be relieved from these erroneous assessments it owes additional taxes on capital to the Commonwealth of Virginia as follows:

1937—$.45; 1938—$34.32; 1939—$89.42; 1940—$149.04; Total—$273.23."

It is difficult to include in any one clear-cut definition all who are manufacturers and none other; and it is likewise difficult to define merchants. Many cases are borderline cases, and to expect uniformity of conclusions is to expect too much.

In *Morris & Co. v. Commonwealth*, 116 Va. 912, 83 S. E. 408, it was held that a packer who put up "bacon and smoked meats" was a manufacturer.

That decision speaks for itself and rests upon reason and authority and not upon any agreed statement of facts. It cites with approval this from *Consumers' Brewing Co. v. Norfolk*, 101 Va. 171, 173, 43 S. E. 336:

" 'A manufacturer is one who is engaged in the business of working raw materials into wares suitable for use.' *People v. New York Floating Dry-Dock Co.*, 63 How. Prac. 451, 453.

"A seller, on the other hand, is one who disposes of a thing in consideration of money. 2 Bouv. L. D. 978.

■ "The business of manufacturing an article is, therefore, essentially different from that of selling the article after it has been manufactured. And the fact that the article is manufactured for sale cannot have the effect of obliterating the line of demarkation between the two businesses."

*Engle* v. *Sohn & Co.*, 41 Ohio St. 691, 52 Am. Rep. 103, is also relied upon. That case is characterized as well considered and constructive. A pork packer was held to be a manufacturer and not a merchant. By the use of divers instrumentalities the original substance, though not destroyed, was transformed into shapes which could scarcely be recognized.

It rests upon no statutory definition but was "well considered and constructive."

In *Neuhoff Packing Co.* v. *Sharpe*, 146 Tenn. 293, 240 S. W. 1101, meat packers were held to be manufacturers and adopted these definitions from *Chattanooga Plow Co.* v. *Hays*, 125 Tenn. 148, 140 S. W. 1068:

■ "The marked distinction between a manufacturer and a merchant is that the merchant or dealer sells to earn a profit, and the manufacturer sells to take profit already earned. He must buy the materials out of which to make his finished product, and he must sell the product of his factory after it is finished. But such dealings are not his occupation. The one supplies him with the materials with which to pursue it, while the other merely enables him to take the profit earned."

■ Those who cure hams and bacon in some particular manner are manufacturers. *Neuhoff Packing Co.* v. *Sharpe*, *supra*.

In *Carroll County Com'rs* v. *Shriver Co.*, 146 Md. 412, 126 A. 71, canners of corn were held to be manufacturers. Sometimes the corn is shaved from the cob and sometimes the whole ear is canned.

Those who can apples are manufacturers. *Nixa Canning Co.* v. *Lehman-Higginson Grocer Co.*, 70 Kan. 664, 79 P. 141, 70 L. R. A. 653. Those who can beans are manufacturers. *Phillips* v. *Byers*, 189 Cal. 665, 209 P. 557. Those

who creosote lumber are manufacturers. *State* v. *American Creosote Works*, 163 La. 547, 112 So. 412.

*Richmond* v. *Richmond Dairy Co.*, 156 Va. 63, 157 S. E. 728, is relied upon by appellants. That case dealt with milk, cream and buttermilk, which were pasteurized by the Dairy Company. That process consists of raising their temperatures to 145 degrees, holding it there for thirty minutes and then, by suitable devices, rapidly lowering it. Buttermilk is milk with butter taken out and to it some culture added. These articles are not changed. They taste the same, and they look the same. It was held that this Dairy Company was not a manufacturer. That decision bears date March 19, 1931. Evidently it did not find favor with the Legislature, for by an Act approved March 22, 1932, Acts of Assembly, 1932, page 336, it was declared that these dairy companies could be taxed on their capital under section 73 of the Tax Code of Virginia and not as merchants under State or local laws.

Certainly the Dairy Company case did not intend to repeal the Morris Packing Company case; it did not even mention it.

*Anheuser-Busch Brewing Ass'n* v. *United States*, 207 U. S. 556, 28 S. Ct. 204, 206, 52 L. Ed. 336, 337, is also relied upon. It there appears that imported cork was dusted and from it dust and bugs were blown away; it was cleaned with steam, dried, bathed in glycerin, dried again and cut into bottle stoppers. The court said that this did not constitute manufacturing, and that "a cork put through claimant's process is still a cork."

In *American Fruit Growers* v. *Brogdex Co.*, 283 U. S. 1, 51 S. Ct. 328, 75 L. Ed. 801, it is said:

" 'Manufacture,' as well defined by the Century Dictionary, is 'the production of articles for use from raw or prepared materials by giving to these materials new forms, qualities, properties, or combinations, whether by hand-labor or by machinery'; also 'anything made for use from raw or prepared materials.' "

The Century Dictionary also gives us this primary definition of a merchant: He is "one who is engaged in the

business of buying commercial commodities and selling them again for the sake of profit."

A hog on the hoof put through plaintiffs' packing plant is no longer a hog. It comes out as hams, shoulders, middlings, sausage, souse, chitterlings and other articles of commerce fit for consumption. Its value is increased. The color of this ham is changed; its texture is changed; its taste is changed; putrefaction is prevented, and it may be kept wholesome for an indefinite time. Its analogy to cork bottle stoppers as to classification is not strong.

Undoubtedly the rule in Pennsylvania is with the appellants. See *Commonwealth* v. *Weiland Packing Co.*, 292 Pa. 447, 141 A. 148. In Virginia the rule is otherwise. That adopted is in line with her policy, which seeks to encourage manufacturing, and is supported by the weight of authority elsewhere.

The trial court was right, the judgment should be affirmed, and it is so ordered.

*Affirmed.*