## Richmond

GRADY J. PRENTICE, TRADING AS PRENTICE POULTRY PLANT v. CITY
OF RICHMOND.

January 16, 1956.

Record No. 4457.

Present, All the Justices.

The opinion states the case.

*R. Pinkney Sowers, William Eldridge Spain* and *H. Brice Graves,*
for the appellant.

*J. Elliott Drinard* and *John P. McGuire, Jr.*, for the appellee.

SMITH, J., delivered the opinion of the court.

■ This proceeding was instituted by Grady J. Prentice, trading as the Prentice Poultry Plant, against the City of Richmond for the correction of an allegedly erroneous tax assessment made pursuant to § 10-85 of chapter 10 of the Richmond City Code of 1937, as amended, which section imposes upon wholesale merchants a city revenue license tax based upon purchases during the preceding year, and contains the following exception, in paragraph (c):

"* * * All goods, wares and merchandise manufactured by a wholesale merchant and sold or offered for sale as merchandise shall be considered as purchases within the meaning of this section, provided that this section shall not be construed to apply to manufacturers who offer for sale at the place of manufacture goods, wares and merchandise manufactured by them, but such manufacturer may, without a wholesale merchants' license, sell at the place of manufacture the goods, wares and merchandise manufactured by him. * * *"
The state wholesale merchant's license tax, § 58-316 of the Code of 1950, as amended, also contains a similar exception.

In its final judgment the trial court held that Prentice was not a manufacturer and consequently was liable for taxation as a wholesale merchant, to which judgment we granted a writ of error. The sole issue is whether Prentice as a poultry processor was a "manufacturer" in the City during 1953 and therefore exempt from a wholesale merchants' license tax levied by the City for that year.

There is no conflict in the evidence. Prentice's business operation consists of the buying, killing, cleaning, chilling, and the sale and delivery of poultry to various wholesalers and jobbers. The business is of sufficiently substantial character to encompass an investment of approximately $30,000 in real estate and improvements, and an additional $30,000 in plant machinery. The annual gross sales for processed poultry exceeded $800,000 in 1952, and the cost of live poultry for that year amounted to approximately $670,000.

On arrival at the plant the live poultry is hung at nine inch intervals on a moving overhead conveyor which travels at the rate of 18 feet per minute. It is then hand-killed, dipped into a tank of hot water to loosen the feathers, and passed through a machine which

removes all but the pin feathers, which are removed by hand. Further along the conveyor line the poultry is eviscerated and hand-cleaned, thoroughly washed and the edible parts reinserted in the carcass, which is then graded by weight and quality, sorted and chilled. Twenty-four carcasses come off the conveyor as dressed poultry each minute of working time, with the entire operation, exclusive of chilling, taking about 15 minutes. After chilling in crushed ice, 25 carcasses are placed in wooden containers lined with waxed paper and iced further while awaiting sale.

In support of the contention that he is a manufacturer and therefore exempt from the City's wholesale license tax, Prentice argues forcefully for a quantitative definition of manufacturing, that is, the same operational undertaking is or is not manufacturing depending on the relative importance of mechanical devices or machinery used in the process of turning out a particular finished product. Hence, size of plant, amount of investment and production, and degree of mechanization plus the hope of earning a profit are the primary components of appellant's concept of manufacturing. The City argues on the other hand that Prentice has overstressed the quantitative element in manufacturing and underemphasized the qualitative factor of change or transformation of the original ingredient as required by the Virginia cases. It contends that the central theme of the Virginia decisions is that an industrial or commercial operation is not manufacturing unless in the course of processing there is an essential change or transformation of the raw material into an article or product of substantially different character. The City concedes, however, that this rule has been applied liberally in line with the public policy of Virginia to encourage manufacturing.

Both parties rely on the Virginia decisions of *Commonwealth* v. *Meyer*, 180 Va. 466, 23 S. E. (2d) 353, *Richmond* v. *Richmond Dairy Co.*, 156 Va. 63, 157 S. E. 728, *Morris & Co.* v. *Commonwealth*, 116 Va. 912, 83 S. E. 408, *Consumers' Brewing Co.* v. *City of Norfolk*, 101 Va. 171, 43 S. E. 336, and cases therein discussed.

In the *Consumers' Brewing Co.* case the defendant was charged with manufacturing beer within the city of Norfolk without a license, but its conviction was based on proof of illegally selling beer. Since the defendant was not engaged in manufacturing but was illegally selling beer, the conviction was reversed. In noting that manufacturing and selling were essentially different businesses, the court said:

" 'A manufacturer is one who is engaged in the business of working

raw materials into wares suitable for use.' *People* v. *N. Y. Floating Dry-Dock Company*, 63 How. Prac. 451.

"A seller, on the other hand, is one who disposes of a thing in consideration of money. 2 Bouv. L. D. 978.

"The business of manufacturing an article is, therefore, essentially different from that of selling the article after it has been manufactured. And the fact that the article is manufactured for sale cannot have the effect of obliterating the line of demarkation between the two businesses." 101 Va., at page 173.

In *Morris & Co.* v. *Commonwealth*, *supra*, a meat packing company was held to be a manufacturer and consequently exempt from the merchants' license tax then imposed by the state. The business of the company was purchasing livestock and slaughtering it, and from the carcasses making and preparing for sale and selling various food products including sausage, head cheese, mince meats, canned meats, bacon, smoked meats and lard. While the court approved the definition of manufacturing as set out in the *Consumers' Brewing* case, it went further and emphasized the concept of transformation when it said:

"A well considered and instructive case in point is that of *Engle* v. *Sohm*, 41 Ohio St. 691, 52 Am. Rep. 103, in which it is held that a pork packer is a manufacturer and not a merchant, within the meaning of the term 'manufacturer' as used in tax and revenue laws. The court in its opinion says: 'The occupation of the defendants in error was, we think, essentially that of manufacturers. By the use of tools, implements and mechanical devices; by subjecting the slaughtered animals to divers processes, running—some of them—through several months; by a combination with various materials and ingredients requiring skill, care and attention, products were obtained in the form of pork, lard and cured meats, to which may appropriately be applied the term 'manufactured articles.' The original substance, though not destroyed, was so transformed through art and labor that without previous knowledge it could not have been recognized in the new shape it assumed, or in the new uses to which it was applied. * * *' " 116 Va., at page 916.

The next case to come before this court involving the meaning of manufacturing for purposes of taxation was *Richmond* v. *Richmond Dairy Co.*, *supra*. The precise issue in that case was whether that part of the dairy's business which consisted of the purchasing of raw milk, the pasteurizing and separating of milk and cream, and the sale

of milk, cream and buttermilk was exempt from a city merchant's license tax on the ground that the dairy was a manufacturer. The dairy admitted that it was a merchant insofar as it purchased finished dairy products from other firms and resold them, and the City admitted that the dairy was a manufacturer with regard to that part of its business which consisted of the production of cheese, powdered and condensed milk manufactured from fluid milk. After reviewing more than a dozen cases, the court held, speaking through Chief Justice Prentis, that the business of buying fluid milk, pasteurizing and selling it as fluid milk and cream was not manufacturing. In so holding the court reviewed and quoted with approval from *Anheuser-Busch Brewing Assoc. v. United States*, 207 U. S. 556, 28 S. Ct. 204, 206, 52 L. ed. 336, the following:

" '* * * Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor and manipulation. But something more is necessary, as set forth in *Hartranft* v. *Wiegmann*, 121 U. S. 609, 7 S. Ct. 1240, 30 L. Ed. 1012. There must be transformation; a new and different article must emerge, 'having a distinctive name, character or use. * * *' " 156 Va., at page 75.

Contrary to Prentice's contention, the logic and reasoning of the *Richmond Dairy* case was not altered by the subsequent enactment by the General Assembly of what is now Code, § 58-416, which provides that a dairy shall be taxed as a manufacturer on capital under Code, § 58-418, and not as a merchant under either state statutes or local tax ordinances. The specific designation by the General Assembly of a particular business as a manufacturer, without more, in no way changes the principles to be applied in determining what constitutes manufacturing.

The most recent case to come before the court was *Commonwealth* v. *Meyer, supra,* which involved both a state and a city merchants' license tax. Meyer, a meat packer, was engaged in the business of purchasing hogs and cattle on the hoof, slaughtering and processing them and selling the meat products. In the course of this operation the carcasses of the hogs were carved into hams, shoulders and middlings and what was left was made into sausage, lard, etc. The hams and shoulders were tenderized, salted, smoked and cured and after the expiration of about 10 days they were wrapped for sale with their weight noted on the package. The middlings were sliced into breakfast bacon and packaged for sale. The court considered but rejected

the stricter Pennsylvania rule that meat packers are not manufacturers and held that Meyer's operation involved sufficient transformation of the original ingredients to meet the definition of manufacturing. In so holding Justice Holt, later Chief Justice, reviewed the Virginia cases and noted that the Morris case quoted with approval the definition of "manufacturer" and "seller" contained in the *Consumers' Brewing Co.* case. Commenting on the process of pasteurization as applied to milk, cream and buttermilk in the *Richmond Dairy* case, the opinion points out that: "These articles are not changed. They taste the same, and they look the same." And in discussing *Engle* v. *Sohn, supra,* where a pork packer was held to be a manufacturer, the court said: "By the use of divers instrumentalities the original substance, though not destroyed, was transformed into shapes which could scarcely be recognized." In concluding its opinion the court recognized that there must be a substantial change or transformation of the original article when it said:

"A hog on the hoof put through plaintiffs' packing plant is no longer a hog. It comes out as hams, shoulders, middlings, sausage, souse, chitterlings and other articles of commerce fit for consumption. Its value is increased. The color of this ham is changed; its texture is changed; its taste is changed; putrefaction is prevented, and it may be kept wholesome for an indefinite time. * * *" 180 Va., at page 473.

A review of the cases from other jurisdictions reveals that there is a diversity of opinion as to whether meat packers are manufacturers within the meaning of tax statutes and ordinances exempting them from taxation. 84 C. J. S., Taxation, § 274, p. 520; 51 Am. Jur., Taxation, § 549, p. 579; 116 A. L. R. 1121; 10 A. L. R. 1299. However, we have been directed to no case in which butchers and slaughterers who sell fresh meat only, without curing, grinding, rendering or in some other way altering the essential character of the meat, have been held manufacturers. See *New England Dressed Meat and Wool Co.* v. *Roberts,* 155 N. Y. 408, 50 N. E. 53; *Commonwealth* v. *Consolidated Beef Co.,* 242 Pa. 163, 88 A. 975; *Commonwealth* v. *Consolidated Dressed Beef Co.,* 245 Pa. 605, 91 A. 1065.

In its written opinion the learned trial judge succinctly summarized the general principles to be applied in determining whether a given set of facts constitute manufacturing:

"In general the more comprehensive definitions recognize three essential elements involved in manufacturing: (1) original material referred to as raw material; (2) a process whereby the raw material

is changed; and (3) a resulting product which, by reason of being subjected to the processing, is different from the original raw material. The conflict in the authorities results largely in the different viewpoints as to the degree of change necessary to satisfy the third requirement. It may be said, however, that mere manipulation or rearrangement of the raw materials is not sufficient; there must be a substantial, well-signalized transformation in form, quality and adaptability rendering the material more valuable for man's use than it was before."

■ In support of his contention that he is a manufacturer, Prentice also relies on the construction of and ruling under certain Virginia tax statutes made by the State Tax Commissioner, which ruling reads in part as follows:

"Processing chickens, turkeys or other poultry is not manufacturing. Such processing is processing and no more. Whether or not such processing at the wholesale level is sufficient to take the processor out of the mercantile classification and put him into the capital classification is a very close question indeed. Wherever the plants are outfitted with modern machinery and the processing is at the wholesale level the Department of Taxation gives the processor the benefit of the doubt and permits him to file a capital tax return the same as a manufacturer in lieu of taking out the wholesale merchant's license to cover the poultry actually processed."

This ruling lends little support to Prentice since it specifically states that poultry processors are not manufacturers. It holds, however, that under certain conditions a poultry processor will be treated for tax purposes as though he were a manufacturer. If the ruling be accepted as holding Prentice's operation to be manufacturing under the City's scheme of taxation, he will be relieved of paying any city license tax, because the City, unlike the State, has no blanket authority to tax the capital of any trade or business "otherwise specifically taxed or specifically exempt from taxation." Code, § 58-410. In any event, this is an administrative ruling and must be accorded due respect, but it does not necessarily and of its own force bind the City in its tax assessments. See *Great Atlantic and Pacific Tea Company* v. *City of Richmond*, 183 Va. 931, 949, 33 S. E. (2d) 795.

■ While we agree with Prentice that the elements of his quantitive definition of manufacturing should receive consideration in determining whether a particular processing operation constitutes manufacturing within the meaning of the tax ordinance, we are of the

opinion that in his processing operation the necessary qualitative element of manufacturing is lacking. There is no change or transformation of the live poultry into an article or product of substantially different character; slaughtering poultry, picking and cleaning it does not constitute such change as is essential to manufacturing. It follows therefore that Prentice is not a manufacturer but a wholesale merchant subject to the City tax assessment.

Accordingly, the judgment is affirmed.

*Affirmed.*