## Richmond

### SOLITE CORPORATION

### V.

### COUNTY OF KING GEORGE, VIRGINIA

January 11, 1980.

Record No. 781597.

Present: All the Justices.

*Carle E. Davis (Joseph C. Wool, Jr.; McGuire, Woods & Battle, on briefs), for appellant.*

*A. Blanton Massey (Gary M. Nuckols; Massey & Nuckols, P.C., on brief), for appellee.*

I'ANSON, C.J., delivered the opinion of the Court.

Pursuant to Code § 58-1145, Solite Corporation filed an application seeking correction of allegedly erroneous assessments of county license taxes for the years 1973, 1974, and 1975. Solite alleged that it was exempt from county license taxes under the provisions of Code § 58-266.1(A)(4) because its sand and gravel operations constituted manufacturing. The trial court held that Solite's operations did not constitute manufacturing and consequently denied its application.

The issue presented is whether Solite's extracting and processing (crushing, washing, screening, grading, and blending) of sand and gravel constitute manufacturing within the meaning of Code § 58-266.1(A)(4).*

Solite operates a facility in King George County where it extracts broken rocks, clay, and sand from the earth after removing the top-soil. These raw materials are then transported to its plant where the clay and other waste materials are removed through washing. The sand is separated from the rock. Machinery then crushes the broken rocks to desired sizes and then reassembles various grades of the rock together, blending the rock into a gravel mixture. A similar procedure is followed in separating, grading, and combining different types of extracted sand. The finished products, "concrete sand" and "No. 68 gravel," are sold to suppliers or builders for use in highway and building construction projects. There was evidence that prior to this processing, the raw materials have only nominal value and could only be used as landfill.

In resolving questions concerning the applicability of tax exemptions, we have followed several well-settled rules. "Statutes granting tax exemptions are construed strictly against the taxpayer. When a tax statute is susceptible of two constructions, one granting an exemption and the other not granting it, courts adopt the con-

---

* Code § 58-266.1(A)(4) provides as follows:

"No city, town or county shall levy any license tax on a manufacturer for the privilege of manufacturing and selling goods, wares and merchandise at wholesale at the place of manufacture, whether the same be measured by gross receipts or otherwise, any city or town charter provisions to the contrary notwithstanding."

struction which denies the exemption." *Commonwealth* v. *Community Motor Bus,* 214 Va. 155, 157, 198 S.E.2d 619, 620-21 (1973).

■ Our determination of whether Solite's activities constitute manufacturing is guided by our prior decisions. In *Prentice* v. *City of Richmond,* 197 Va. 724, 731, 90 S.E.2d 839, 843 (1956), we held that the processing of poultry did not constitute manufacturing because "[t]here is no change or transformation of the live poultry into an article or product of substantially different character." In *Commonwealth* v. *Meyer,* 180 Va. 466, 23 S.E.2d 353 (1942), we concluded, however, that meat packers engaged in the processing of hogs into cured hams, shoulders, and bacon were manufacturers. The *Meyer* decision rested upon the conclusion that a "hog on the hoof put through plaintiffs' packing plant is no longer a hog," but instead had been transformed into consumable products having little resemblance to the hog brought into the plant. 180 Va. at 473, 23 S.E.2d at 356. In *Richmond* v. *Dairy Co.,* 156 Va. 63, 75, 157 S.E. 728, 732 (1931), we held that the pasteurization of milk and cream was not manufacturing because "there is no difference in the characteristic form, appearance, taste and use" of these products after pasteurization.

These prior decisions indicate that unless the processing transforms the new material into an article or a product of substantially different character, it cannot be considered to be manufacturing even though the processing increases the value or usefulness of the product. In *Prentice, supra,* 197 Va. at 728, 90 S.E.2d at 842, and *Dairy Co., supra,* 156 Va. at 75, 157 S.E. at 732, we quoted with approval the following definition of manufacturing used by the Supreme Court in *Anheuser-Busch Brewing Association* v. *United States,* 207 U.S. 556, 562 (1908): "Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor and manipulation. But something more is necessary. . . . There must be transformation; a new and different article must emerge, 'having a distinctive name, character or use.' "

Under this standard, the Court in *Anheuser-Busch Brewing Association* determined that processing cork for use in bottling beer did not constitute manufacturing because "a cork put through the claimant's process is still a cork." 207 U.S. at 562. In *American Fruit Growers, Inc.* v. *Brogdex Co.,* 283 U.S. 1, 11-13 (1931), the Court concluded that the chemical treatment of fruit in order to preserve it and enhance its value was not manufacturing. Most

recently, in *East Texas Motor Freight Lines, Inc.* v. *Frozen Food Express,* 351 U.S. 49, 54 (1956), the Court concluded that the processing of poultry did not constitute manufacturing, noting that "where the commodity retains a continuing substantial identity through the processing stage we cannot say that it has been 'manufactured.'" Undoubtedly, the poultry in *Prentice* and *East Texas Motor Freight Lines,* the cork in *Anheuser-Busch Brewing Association,* the fruit in *American Fruit Growers,* and the milk and cream in *Dairy Co.* were rendered more valuable and useful through the processing they underwent. Nevertheless, the processing of the product was not considered to be manufacturing.

Solite notes that Kentucky and Missouri have adopted broader definitions of manufacturing. *See Department of Revenue* v. *Allied Drum Service, Inc.,* 561 S.W.2d 323, 325-26 (Ky. 1978) (definition based upon commercial value), *overruling Colley* v. *Eastern Coal Corp.,* 470 S.W.2d 338 (Ky. 1971); *Wilson & Co., Inc.* v. *Department of Revenue,* 531 S.W.2d 752, 754 (Mo. 1976); *West Lake Quarry & Material Co.* v. *Schaffner,* 451 S.W.2d 140, 143 (Mo. 1970) (definition based upon suitability for common use). We have considered these cases cited by Solite and see no reason to depart from our previously announced standard of what constitutes manufacturing, one which is employed by the vast majority of courts, including the Supreme Court of the United States.

■ Courts have uniformly held that the quarrying of rock is not manufacturing. *See, e.g., Rock of Ages Corp.* v. *Commissioner of Taxes,* 360 A.2d 63 (Vt. 1976). In addition, a majority of courts have held that the process of crushing and screening of rock into various sizes does not constitute manufacturing. *State* v. *Wertheimer Bag Co.,* 253 Ala. 124, 128, 43 So.2d 824, 828 (1949); *Iowa Limestone Co.* v. *Cook,* 211 Iowa 534, 539-41, 233 N.W. 682, 684-86 (1930); *Leeds* v. *Maine Crushed Rock & Gravel Co.,* 127 Me. 51, 56-58, 141 A. 73, 75 (1928); *Wellington* v. *Belmont,* 164 Mass. 142, 41 N.E. 62 (1895); *People ex rel. Tompkins Cove Stone Co.* v. *Saxe,* 176 App. Div. 1, 5-6, 162 N.Y.S. 408, 411 (1916), *aff'd mem.,* 221 N.Y. 601, 117 N.E. 1081 (1917); *Duke Power Co.* v. *Clayton,* 274 N.C. 505, 514-16, 164 S.E.2d 289, 295-97 (1968) (crushing, washing, and screening of coal); *Schumacher Stone Co.* v. *Tax Commission,* 134 Ohio St. 529, 18 N.E.2d 405, 120 A.L.R. 1199 (1938); *Commonwealth* v. *Welsh Mountain Mining & Kaolin Manufacturing Co.,* 265 Pa. 380, 382-83, 108 A. 722, 723 (1919). *See generally* Annot., 17 A.L.R.3d 7, § 27(b)

at 71-74 (1968). While a few courts have held that rock crushing constitutes manufacturing, *see, e.g., Georgia Marble Co. v. Strickland,* 243 Ga. 206, 253 S.E.2d 155 (1979); *Tulsa Machinery Co. v. Oklahoma Tax Commission,* 208 Okla. 138, 253 P.2d 1067 (1953), we are not persuaded that the mere crushing of rocks transforms the rocks into "an article or product of substantially different character." *Prentice, supra,* 197 Va. at 731, 90 S.E.2d at 843.

Other aspects of Solite's operation likewise fail to meet the requisites for manufacturing. Although the washing, the screening, and the grading remove impurities and segregate the various grades of sand and gravel, these procedures do not substantially alter the character of the sand and gravel. Moreover, the blending of various grades of gravel in making "No. 68 gravel" and the blending of various grades of sand in making "concrete sand" do not constitute manufacturing. The mere blending together of various ingredients, in the absence of a transformation into a product of substantially different character, is not manufacturing. *Ohio Ferro-Alloys Corp. v. Kosydar,* 34 Ohio St. 2d 113, 116-17, 296 N.E.2d 533, 536 (1973); *Commonwealth v. Tetley Tea Co.,* 421 Pa. 614, 616-17, 220 A.2d 832, 834 (1966).

After Solite's processing of the raw materials, the sand is still sand and the rock is still rock. The sand and gravel marketed by Solite have not been transformed into articles of substantially different character. We conclude, therefore, that Solite's processing of sand and gravel does not constitute manufacturing within the meaning of Code § 58-266.1(A)(4).

For the reasons stated, the judgment of the court below is

*Affirmed.*