## CIRCUIT COURT OF ROCKINGHAM COUNTY

Byrd and Frederickson, Inc.

v.

William H. Forst,
State Tax Commissioner

September 11, 1974

Case No. 5321

BY JUDGE JOSHUA L. ROBINSON

The applicant has filed a petition pursuant to Section 58–1130 of the Code of Virginia for relief from allegedly erroneous assessments made by the Commissioner under § 58–441.5 of the Code upon machinery and equipment used for the washing, brushing, waxing, drying, grading and sorting of apples. Applicant claims an exemption under Code Section 58–441.6:

> The terms "sale at retail" . . . "distribution," "use," "storage," and "consumption" shall not include . . . machinery or tools . . . used directly in [industrial][1] *processing*, manufacturing, refining, mining or conversion of products for sale or resale. (Emphasis supplied.)

The burden is on the taxpayer to show that he comes within the exemption, which is strictly construed against him. *Commonwealth, ex rel. Morrissett* v. *Manzer*, 207 Va. 996, 154 S.E.2d 185 (1967); *Commonwealth* v. *Research Analysis Corporation*, 214 Va. 161, 198 S.E.2d 622 (1973).

Byrd and Frederickson, Inc., is a Virginia corporation, the stock of which is wholly owned by two other Virginia corporations, each of which is a farmer within the meaning of the Sales Tax Code provisions. It handles only apples grown by its stockholder corporations.

---

[1] Golden Skillet Corp. v. Commonwealth, 214 Va. 276, 199 S.E.2d 511 (1973).

The equipment used is large and expensive and the Commissioner concedes the operation is on an "industrial" scale.

Apples fresh from the tree are delivered to taxpayer in bulk, and then by the use of the machinery and equipment with which we are here concerned, they are transformed from a condition in which they are economically unmarketable,[2] into a product that will catch the eye, awaken the palate, and open the purse of the housewife at the super-market.

The machinery washes, brushes, rinses, and dries the apples; by the use of detergent the wax supplied by nature is removed and a vegetable wax is substituted to enhance preservation. It treats the apples with a fungicide, which prevents mold and decay, and applies a chemical to absorb carbon dioxide which retards metabolism, or the ripening process. The apples are sorted, sized, graded, and then packaged for market.

If the machinery were owned by the orchard owner, it would be exempt, as the ultimate step of agricultural harvesting. Code § 58–441.6(c). If the machinery were used in the initial stages of making applesauce, it would be exempt as used directly in manufacturing. But applicant is neither a farmer nor a manufacturer, and we must ascertain whether it is a processor. The respondent concedes that the words "for sale or resale" are not relevant insofar as decision here is concerned. *Cf. Piper v. Glander*, 77 N.E.2d 714 (Ohio 1948), where the freezing (processing) was for the ultimate consumer.

In *Richmond v. Richmond Dairy Co.*, 156 Va. 63, 157 S.E. 728 (1931), the question before the Court was whether the pasteurization of milk constituted manufacturing. The Court, speaking through Mr. Chief Justice Prentis, held that the pasteurization of milk did not constitute manufacturing, but in several places in the opinion described pasteurization as a "process," *e.g.*, 156 Va. at 68, 75. Again in *Prentice v. City of Richmond*, 197 Va. 724, 90 S.E.2d 839 (1956), the question was whether "processing" of chickens constituted manufacturing; in that case, the so-called processor slaughtered the chickens, cut them up and sold them as cut-up chickens. Throughout that opinion, the Court considered that what petitioner was doing to the chickens constituted

---

[2] The evidence also indicates that it may be a violation of Federal Pure Food Laws to retail the apples without removal of the spray residue (presumably of insecticide applied in the orchard).

processing. The Court adopted a definition of manufacturing in *Prentice*. 179 Va. at 729. In general, the more comprehensive definitions recognize three essential elements involved in manufacturing: (1) original material referred to as raw material, (2) a *process* whereby the raw material is changed, and (3) a resulting product which by reason of being subjected to the *processing* is different from the original raw material. The Supreme Court thereby recognized that processing is a narrower term than manufacturing and one need not be a manufacturer to be a processor. We have to assume that the language in those two cases was before the legislature when in 1966 they enacted the 58–441.6 exemption from the sales tax statute, and they intended that the word "processing" should include procedures to which raw materials are subjected that are not included within the broader definition of manufacturing. If that were not the case, there would have been no purpose in the legislature specifically adding the word "processing" to the statute; therefore, the legislature was using the term processing as the Supreme Court (of Appeals) used it in *Prentice* and *Richmond Dairy*, and since the sales and use tax exemption provisions of Ohio were similar to the provisions of the Virginia act, and we look to the statute and the decisions of the Supreme Court of Ohio, at the time of enactment of the statute, for guidance, *Commonwealth* v. *Community Motor Bus Co.*, 214 Va. 155 (1973), the legislature was using the term as it had been then interpreted by the Supreme Court of Ohio.

The Ohio Court had defined processing in *Huron Fish Co.* v. *Glander*, 67 N.E.2d 546 (Ohio 1946), as:

> to subject to some special process or treatment. To subject (esp. raw materials) to a process of manufacture, development, preparation for the market. (Citations omitted.)
>
> The word "process" means to subject, especially raw material to a process of manufacturing, development for the market, etc., and to convert to marketable form, as livestock by slaughtering, grain by milling, cotton by spinning, milk by pasteurizing, *fruits and vegetables by sorting and repacking*. 67 N.E.2d at 547. (Emphasis supplied.)

In *Northwestern Ohio Poultry Ass'n, Inc.* v. *Schneider*, 2 Ohio St. 2d 34, 205 N.E.2d 905 (1965), the Ohio Court considered whether the washing of eggs, inspection by candling, oiling to prevent the escape of carbon dioxide, and crating, constituted processing. In a *per curiam*

opinion the Court held that appellee was "processing and preparing for market and sale" (205 N.E.2d at 906) and entitled to the exemption.

On similar facts, the Supreme Court of South Carolina reached the same result. *Monroe* v. *Livingston*, 161 S.E.2d 243 (N.C. 1968).

Although *Northwestern Poultry* was overruled by a closely divided court in *Gressel Produce Co., Inc.* v. *Kosydar*, 34 Ohio St. 2d 206, 297 N.E.2d 532 (1973), this decision followed an amendment to the Ohio Statute, Ohio R.C. 5739.01(s):

> "Manufacturing" or "processing" means the transformation or conversion of material or things into a *different state or form* from that in which they originally existed. 297 N.E.2d at 534.

Three dissenting justices considered washing and replacement of a natural oil on the egg-shell with a coating of mineral oil, to be a change in shape and form from dirty, unsalable eggs to clear, marketable eggs, which came within the statutory exemption.

However, while the Ohio legislature was narrowing the earlier judicial construction of the Ohio statute, the Virginia legislature in 1973 enacted Code Section 58–441.3(p):[3]

> "Manufacturing, processing, refining, or conversion" as used in this chapter, includes the production line of the plant starting with the handling and storage of raw materials at the plant site and continuing through the last step of production where the product is finished or completed for sale and conveyed to a warehouse at the production site, and also includes equipment and supplies used for production line testing and quality control.

There is no requirement in the Virginia statute that there be a change in shape or form. The inclusion in 58–441.3 of "equipment and supplies used for production line testing and quality control" negates any inference that such is required.

Viewing the Virginia statute in the light of the authoritative interpretation of the Ohio statute, at the time Virginia's statute was adopted, the Court must conclude that the applicant starts with raw materials (unsalable apples) at the plant site and by the use of the machinery here involved, converts the apples into a product which is a

---

[3] Although the instant assessment was in 1972, the 1973 amendment is not inconsistent with the Commissioner's earlier regulations.

500

finished or completed product for sale. This constitutes processing and applicant is entitled to the relief prayed for.