VAN DYNE CROTTY COMPANY, APPELLEE AND CROSS-APPELLANT, *v.*
LIMBACH, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

SERVI-CLEAN INDUSTRIES, INC., APPELLEE AND CROSS-APPELLANT, *v.*
LIMBACH, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

[Cite as Van Dyne Crotty Co. *v.* Limbach (1990), 53 Ohio St. 3d 3.]

(Nos. 89-1670 and 89-1671—Submitted May 15, 1990—Decided August 1, 1990.)

*Vorys, Sater, Seymour & Pease,
Raymond D. Anderson, Matthew J.
Barrett* and *Eric A. Pierce,* for ap-
pellee and cross-appellant Van Dyne
Crotty Company.

*Nadler, Nadler & Burdman Co.,
L.P.A.,* and *Peter B. Grinstein,* for ap-
pellee and cross-appellant Servi-Clean
Industries, Inc.

*Anthony J. Celebrezze, Jr.,* at-
torney general, and *Barton A. Hub-
bard,* for appellant and cross-appellee.

4

*Means, Bichimer, Burkholder & Baker Co., L.P.A., Craig D. Leister, Vorys, Sater, Seymour & Pease, Raymond D. Anderson, Matthew J. Barrett* and *Erie A. Pierce,* urging affirmance in part and reversal in part in case No. 89-1670, for *amicus curiae,* Ohio Association of Textile Services.

*Per Curiam.* Prior to November 15, 1981, companies that cleaned the tangible personal property of others and companies that operated a towel and linen service neither paid sales tax on purchases of items used directly in their businesses nor collected sales tax on transactions with their customers. According to former R.C. 5739.01 (E)(4), a retail sale did not include:

"* * * [S]ales * * * in which the purpose of the consumer is:

"* * *

"(4) To use or consume the thing directly in industrial cleaning of tangible personal property; to use or consume the thing directly in cleaning of the tangible personal property used in the rendition of a towel and linen service or supply; such service or supply is not a rental, but is deemed a personal service transaction[.]"

Former R.C. 5739.01(R) defined "industrial cleaning" as:

"* * * [T]he business or occupation of removing soil or dirt from articles of tangible personal property belonging to others."

Thus, under former law, companies that cleaned the property of others performed a service so their transactions with their customers were not taxable, and R.C. 5739.01 (E)(4) excepted their purchases. As to towel and linen service companies, R.C. 5739.01(E)(4) excepted their purchases and "deemed" their transactions to be personal service transactions, which are not sales and, thus, not taxable.

Effective November 15, 1981, the General Assembly, in Am. Sub. H.B. No. 694, amended R.C. 5739.01. Under amended R.C. 5739.01(B)(3)(e), now renumbered (d), industrial laundry cleaning services became sales and, consequently, taxable transactions. The General Assembly amended R.C. 5739.01(R), now renumbered (Q), to define "industrial laundry cleaning services" as:

"* * * [R]emoving soil or dirt from or supplying towels, linens, or articles of clothing that belong to others and are used in a trade or business."

Turning first to the laundry companies' post-amendment purchases, all parties agree that the BTA's reason for exempting these purchases is, at best, ill-formed. The BTA ruled this definition to be ambiguous, resolved the ambiguity in favor of the laundry companies, and included their operations within the scope of the definition. The BTA then exempted their purchases, including ones that the laundry companies conceded were taxable, without detailing how the inclusion of the laundry companies' operations within this definition of a "taxable transaction" resulted in an exemption of their purchases. The laundry companies had argued to the BTA that the disputed purchases were used directly in making retail sales, about which the BTA was silent. In any event, the commissioner here argues that the laundry companies' operations are not included within the scope of this definition.

We agree that this definition is ambiguous. As the BTA and the laundry companies note, "supplying towels, linens, or articles of clothing that belong to others" connotes incongruous notions. According to Black's Law Dictionary (5 Ed. 1979) 1291, "supply" means "[t]o furnish with what is wanted; * * * the act of furnishing with what is wanted." One

does not furnish another with towels, linens, or articles of clothing that belong to that other individual. That person already has a supply of these articles.

Moreover, the commissioner's argument that "supply" means "to provide or furnish clean items after laundering" renders the term "supplying" meaningless. Under this interpretation, "supplying" is unnecessary because one normally expects the laundry company to return, or "furnish" in the commissioner's terminology, the cleaned article to the owner. The definition implicitly includes return of the cleaned article to the owner and does not require the word "supplying" to convey this expectation.

On the other hand, the principle used by the BTA and advanced by the laundry companies, that the definition should be construed to favor the instant laundry companies, was inexactly and inartfully applied. In *B.F. Goodrich Co.* v. *Peck* (1954), 161 Ohio St. 202, 53 O.O. 91, 118 N.E. 2d 525, paragraph three of the syllabus, we stated:

"It is a general rule that, if there is any ambiguity in a statute defining the subjects of taxation, such ambiguity must be resolved in favor of the taxpayer; and this rule of construction generally applies with respect to provisions of a statute stating that certain potential objects of taxation shall not be considered to be included within specified subjects of taxation. * * * [Citations omitted.]"

This principle does not operate to benefit the laundry companies. Current R.C. 5739.01(B)(3)(d) and (Q) define "industrial laundry cleaning services" as a new subject of the sales tax. Since this definition is ambiguous, the *B. F. Goodrich* principle requires construction to favor the taxpayer. However, the taxpayer to be benefited with a favorable construction is not either of the laundry companies; the actual taxpayer is the customer of the laundry companies. A broadening of this definition to include the laundry companies' operations here increases taxable transactions and expands the taxpayer population. This expansion would favor the laundry companies because they could then take advantage of the "making retail sales" exception of R.C. 5739.01(E)(2). But, this expansion is to the detriment of the laundry companies' customers, the actual taxpayers. Limiting the expanse of this definition would favor them. Thus, these circumstances do not require construing R.C. 5739.01(B)(3)(d) and (Q) in favor of the laundry companies.

Yet, the definition remains ambiguous, and the General Assembly has provided interpretational guidelines in R.C. 1.49.[2]

Am. Sub. H.B. No. 694 was a budget bill in which the General Assembly attempted to cope with increasing monetary demands. For the first time, the General Assembly taxed services under the sales tax, including

---

[2] R.C. 1.49 provides:

"If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

"(A) The object sought to be attained;

"(B) The circumstances under which the statute was enacted;

"(C) The legislative history;

"(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

"(E) The consequences of a particular construction;

"(F) The administrative construction of the statute."

"industrial laundry cleaning services," and terminated exemptions for industrial cleaning and towel and linen services.

The General Assembly, as the vehicle to define this new taxable event, amended the former "industrial cleaning" definition. It deleted several phrases from the former definition and in part added language from the former towel and linen service exception. This inclusion of language from these two formerly exempt services in the definition that taxes a new transaction exhibits an intention to tax both of these services. Accordingly, we read R.C. 5739.01(Q) to mean: industrial laundry cleaning services include removing soil or dirt from towels, linens, or articles of clothing that belong to others and are used in a trade or business, and supplying to others towels, linens, or articles of clothing that are used in a trade or business.

This reading taxes both formerly exempt services, the goal of the Act. It harmonizes the excerpted language from the former exemptions. Finally, it gives effect to all the words in the statute by ascribing a meaning to the word, "supplying." R.C. 1.47(B).

The commissioner, furthermore, recognizes, by rule, that a company providing industrial laundry cleaning services may claim an exemption for supplies and equipment used to clean towels, linens, and articles of clothing under the "making retail sales" exemption. Ohio Adm. Code 5703-9-24(B) provides:

"When purchased by a vendor engaged in making retail sales of * * * industrial laundry cleaning service[s], tangible personal property subject to a claim of exemption must be primarily used or consumed directly in rendering the service.

"For purposes of this paragraph, an item is deemed directly used if it is primarily used while the activity that renders the transaction taxable is occurring and such use is the means by which the service is performed. Items that are primarily used or consumed before or after the actual * * * activity that makes the transaction a taxable service, are not used directly and cannot be purchased exempt from the tax."

Moreover, in a stipulation filed with the BTA, the commissioner sets forth her policy regarding exempting items used directly in making retail sales of industrial laundry cleaning services. She considers items used or consumed during and in the actual process of cleaning articles to be exempt. The parties list as examples of exempt items: washers, extractors, dryers, tumblers, and washing and dry cleaning supplies — some of the very items under dispute in this case.

In summary, given that the General Assembly deleted exemptions for the two formerly exempt services and given that the General Assembly included language from the former towel and linen service exception and the former industrial cleaning definition in the definition of the new taxable service, we read the latter definition as taxing both formerly exempt services. Consequently, per Ohio Adm. Code 5703-9-24(B) and the stipulation, purchases of items used in the laundry companies' operations after November 15, 1981 may be exempt under the "making retail sales" exception.

As to the purchases made prior to this date, the laundry companies claim that they used these items directly in processing the linen articles for sale. This argument also has merit.

R.C. 5739.01(E)(2) excepts items used or consumed directly in the production of tangible personal property for sale by manufacturing or process-

ing. R.C. 5739.01(S), now redefined and renumbered in (R), defined, during the audit periods, "manufacturing" or "processing" as:

"* * * [T]he transformation or conversion of material or things into a different state or form from that in which they originally existed * * *."

In *Standard Pressed Steel Co.* v. *Lindley* (1980), 62 Ohio St. 2d 268, 16 O.O. 3d 318, 405 N.E. 2d 281, we held that pickling, or cleaning mill scale from steel rods by immersion in a sulphuric acid bath, began the transformation of the state of steel rods into mechanical metal fasteners. We felt that the pickling process was a direct step in transforming the state of the rods into the final product that was sold. The process, in fact, caused a physical change in the rod. It smoothed the metallic surface, which aided in the annealing process, and reduced the rod's diameter and weight.

Here, in a similar fashion, the laundry companies change the state of the articles laundered. They physically remove dirt, grime, oil, and other contaminants from the fibers, changing the state of the article to a clean product. In some cases, the companies, by removing flammable oil and grease, change non-fire retardant garments into fire retardant ones. They also change non-absorbent towels into absorbent ones by cleaning them. Moreover, the laundry companies would have had few sales, if any, of soiled articles since their customers contracted to receive only clean articles.

In contrast with the cleaning activity in *Gressel Produce Co.* v. *Kosydar* (1973), 34 Ohio St. 2d 206, 63 O.O. 2d 314, 297 N.E. 2d 532, the laundry companies here do not simply enhance the marketability of their product; they actually change, in these operations, the articles into marketable products. *Natl. Tube Co.* v. *Glander* (1952), 157 Ohio St 407, 47 O.O. 313, 105 N.E. 2d 648, paragraph four of the syllabus. They make them "* * * fit for consumption * * *." *Gressel,* 34 Ohio St. 2d at 211, 63 O.O. 2d at 317, 297 N.E. 2d at 536. Thus, the laundry companies here process their rental articles for sale. Consequently, we find *Pioneer Linen Supply Co.* v. *Evatt* (1946), 146 Ohio St. 248, 32 O.O. 260, 65 N.E. 2d 711, not controlling, as it was decided before the General Assembly enacted the statutory definition of "processing."

With this result, we need not address the parties' remaining arguments. However, since the BTA decided these cases on another basis, it must review them in light of this opinion and decide which of the disputed items were used directly in making retail sales or in processing the articles for sale. Furthermore, its review should encompass both entire audit periods.

Accordingly, the decisions of the BTA are reversed and the causes are remanded.

*Decisions reversed
and causes remanded.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.