JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Charlie Bailey ("Bailey") appeals his conviction for possession of heroin, preparation of heroin for sale, possession of criminal tools, and failure to comply with an order or signal of police. We find no merit to the appeal and affirm.
 {¶ 2} Bailey filed a motion to suppress the evidence, and at the suppression hearing, the court heard testimony from three witnesses: Det. Dvorak ("Dvorak"), Det. Clark ("Clark"), and Officer Gandarilla ("Gandarilla"). Dvorak and Clark both testified that they first learned of Bailey's suspected heroin dealings six months prior to his arrest in the instant case when he was arrested for possession of heroin. Both Dvorak and Clark were Cleveland police detectives assigned to the narcotics unit.
 {¶ 3} Dvorak testified that he was investigating the heroin trade in the Slavic Village area and that numerous informants told him that Bailey supplied a large portion of the heroin in Slavic Village. These informants told Dvorak of Bailey's "activity times" and locations where he made deliveries to customers. They also informed Dvorak that Bailey drove a green Pontiac Bonneville. Dvorak shared this information with Clark, whose investigation focused more specifically on Bailey, and Clark confirmed that he also had this information. Because Clark had already obtained this same information from other sources, Dvorak concluded that the informants' information was reliable. Dvorak also testified that he had once observed a green Pontiac Bonneville at a location where heroin was sold.
 {¶ 4} Clark testified that he verified the information provided by the informants through surveillance of Bailey's activities and those of other dealers. While conducting surveillance at the residence of another suspected heroin dealer, Clark observed Bailey arrive at the residence driving a green Pontiac Bonneville and stay for a short time. Subsequently, the police purchased heroin from that location.
 {¶ 5} Clark further testified that a confidential informant also told Clark that he obtained his supply of heroin from Timothy Sutton, who lived in a pink house on Ottawa Avenue. The informant identified the house and the police subsequently conducted surveillance at that address.
 {¶ 6} On January 18, 2001, while the police were conducting undercover surveillance of the pink house on Ottawa, they observed Bailey arrive in a green Pontiac Bonneville. They watched as he hurriedly backed the car into the driveway. They observed a white male quickly exit the house and enter the passenger side of Bailey's car. Clark testified that he saw the two men huddled in the front seat and observed movement that appeared to be an exchange. Given the information they had about Bailey and the reports of heroin being sold at the pink house, Clark testified that he believed they were engaged in drug activity and decided to investigate further.
 {¶ 7} When Clark approached the vehicle and identified himself as a police officer, the car sped off. Det. Gandarilla followed Bailey in another unmarked car and observed Bailey throw bags of suspected heroin out the window. He radioed to Detectives Clark and Dvorak, who followed behind him picking up bundles of heroin along the road. When Bailey was finally stopped and searched, police found additional bundles of heroin in his car and $2,000, along with a cell phone and a pager on his person.
 {¶ 8} At trial, Det. Dlugolinski ("Dlugolinski") testified regarding his investigation of heroin-trading activities within the city prior to Bailey's arrest. Dlugolinski explained that police were watching Bailey's green Pontiac Bonneville because it was one of several vehicles in the parking lot of a barber shop which was under surveillance for suspected drug activity. Dlugolinski stated that he knew nothing about the Bonneville at the time and that it was just one of many vehicles in the parking lot.
 {¶ 9} Dlugolinski further explained that he noticed the vehicle again on a later date parked on East 146th Street and Hampstead, another location of suspected drug activity. Because the vehicle was seen at locations of suspected drug activity, it was under "casual surveillance." This simply meant that if Dlugolinski were in the neighborhood, he would drive by to see if the car was at the address.
 {¶ 10} Dlugolinski testified that he again saw the vehicle on January 18, 2001 on Fleet Avenue in Slavic Village. He further testified that Slavic Village was at that time a high drug traffic area for heroin. As part of his investigation, Dlugolinski followed the Bonneville into the driveway of the pink house on Ottawa Avenue, which Dlugolinski said was also under investigation for drug activity. Dlugolinski saw a white male exit the house and enter the passenger side of the vehicle. He then saw movement between the vehicle's occupants, at which point Det. Clark stopped to investigate. As Clark approached, the vehicle sped off.
 {¶ 11} The co-defendant Timothy Sutton ("Sutton")also testified at trial. He had previously pled guilty to a reduced charge in exchange for his testimony. As part of his plea agreement, it was understood that he would likely receive a community control sanction in lieu of prison because he was terminally ill and under hospice care.
 {¶ 12} Because he was terminally ill, the court allowed the State to take his deposition in advance of trial. The deposition was taken subject to cross-examination by Bailey's counsel. However, because Sutton appeared to be able to testify on the day of trial, the State called him in person as its third witness.
 {¶ 13} Sutton testified that he had planned to buy drugs from "Charlie" and had previously identified Charlie Bailey in court. However, Sutton surprised the State when he testified that he could only "vaguely remember the incident." He explained that his illness "affects the mind." When Sutton stated he could not remember if he himself brought the heroin into the car, the court allowed the State, over objection, to refresh his recollection with the use of the deposition taken six months after the incident.
 {¶ 14} The State asked Sutton the same question about the origin of the heroin at the deposition. The prosecutor read to Sutton from the deposition, ". . . you didn't have them when you got in the car, did you?" and Sutton read his answer, "No. He was handing them to me and I was throwing them out the window." Sutton testified that he was sure his testimony at the deposition was true.
 {¶ 15} Officer Charles Lipscomb ("Lipscomb") testified that he pursued Bailey in a marked patrol car before he ultimately arrested him. He described the chase, which covered over 46 blocks and ended at East 146th Street, where he was able to pull in front of Bailey to stop him. Lipscomb testified that although he was in uniform and drove a marked police vehicle with the lights and sirens activated, Bailey resisted arrest and Lipscomb had difficulty putting handcuffs on him.
 {¶ 16} After two days of trial, the jury returned a guilty verdict on all counts. The court sentenced Bailey to five years in prison on count one, possession of heroin, and concurrent terms of one year imprisonment on counts two and three, preparation of drugs for sale and failure to comply. However, when the prosecutor stated that the sentence for failure to comply must be consecutive, the court sentenced Bailey to ten months for failure to comply to be served consecutively to the five years on count one. Finally, the court sentenced Bailey to ten months in prison for count four, possession of criminal tools, to be served concurrently with counts one, two, and three. Bailey raises eleven assignments of error on appeal.
 Motion to Suppress {¶ 17} In his first assignment of error, Bailey argues he was denied due process of law when the trial court overruled his motion to suppress. Bailey claims the police did not have reasonable suspicion to pursue and ultimately stop his vehicle.
 {¶ 18} "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." State v. Williams (1990), 51 Ohio St.3d 58, 60, quoting Terryv. Ohio (1968), 392 U.S. 1, 22. To warrant an investigatory stop: "the police officer involved `must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" Id.
 {¶ 19} Furthermore, "an investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." Williams, supra at 61, quoting UnitedStates v. Cortez (1981), 449 U.S. 411, 417. Upon review, it must be determined whether there was an "objective and particularized suspicion that criminal activity was afoot" which was based upon the totality of the circumstances. State v. Andrews (1991), 57 Ohio St.3d 86, 87.
 {¶ 20} Reasonable suspicion may be founded on information provided by persons outside the police department. Adams v. Williams (1972),407 U.S. 143, 147. In Adams, the court held that informants' tips, while they vary greatly in their value and reliability, may in certain cases produce reasonable suspicion. Id. The court noted that "* * * one simple rule will not cover every situation." Id. Each case must be decided on its own unique circumstances and any attendant indicia of reliability. Id.
 {¶ 21} In Alabama v. White (1990), 496 U.S. 325, 332, the United States Supreme Court held:
"[A] tip which standing alone would lack sufficient indicia ofreliability may establish reasonable suspicion to make an investigatorystop if it is sufficiently corroborated through independent police work.However, the simple corroboration of neutral details describing thesuspect or other conditions existing at the time of the tip, withoutmore, will not produce reasonable suspicion for an investigatory stop.Id. at 332. Reasonable suspicion is dependent upon both the content ofthe information provided and its degree of reliability. Id. at 330-31.Both the quantity of information available and its quality are examinedunder a totality of the circumstances approach. Id. at 330."
State v. Tenney, 6th Dist. No. L-96-113, 1997 Ohio App. Lexis 1772, citing Alabama v. White (1990), 496 U.S. 325, 332.
 {¶ 22} In a suppression hearing, the evaluation of the evidence and the credibility of witnesses are issues for the trier of fact. Statev. Mills (1992), 62 Ohio St.3d 357; State v. McCulley, 8th Dist. No. 64470, 1994 Ohio App. Lexis 1788. The trial court assumes the role of trier of fact and is, therefore, in the best position to resolve questions of fact and evaluate credibility of witnesses. State v. Klein
(1991), 73 Ohio App.3d 486. Appellate courts should give great deference to the judgment of the trier of fact. State v. George (1989),45 Ohio St.3d 325, 329, 544 N.E.2d 640. Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Klein, supra.
 {¶ 23} In the instant case, the police received information from multiple informants involving Bailey's suspected heroin dealing and that heroin was sold at the Ottawa Avenue house. These tips were not only verified from separate sources outside the police department but they were also corroborated by six months of independent police investigation. Under these circumstances, a cautious police officer could reasonably conclude that drug activity was occurring when he approached Bailey in the driveway of the pink house on Ottawa. Although the fact that Bailey fled from police added to their suspicion, the police had reasonable suspicion to stop and investigate Bailey before he fled. Therefore, the trial court properly denied Bailey's motion to suppress and the first assignment of error is overruled.
 Evidence that Bailey was Under Investigation {¶ 24} In his second assignment of error, Bailey argues he was denied due process and a fair trial when the court permitted evidence that he was under investigation for heroin sales. Specifically, Bailey contends that evidence that he was the subject of a drug investigation caused the jury to conclude that simply because he was being investigated for drug violations, he should be convicted. He also claims that police testimony regarding their observations of his actions constitutes inadmissible evidence of prior acts.
 {¶ 25} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Generally, all relevant evidence is admissible. Evid.R. 402. However, relevant evidence is not admissible when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evid.R. 403(A); State v. Jurek (1989),52 Ohio App.3d 30, 35. Absent an abuse of discretion and a showing that the accused has suffered material prejudice, an appellate court will not disturb the ruling of the trial court as to the admissibility of relevant evidence. State v. Martin (1985), 19 Ohio St.3d 122, 129, certiorari denied (1986), 474 U.S. 1073.
 {¶ 26} Further, Evid.R. 404 prohibits the admissibility of character and "other acts" evidence to demonstrate that a defendant acted in conformity with such character or "other acts." State v. Mann (1985),19 Ohio St.3d 34, 36. However, Ohio courts routinely hold that testimony concerning the basis or reason for an officer's investigation or subsequent investigative activities is admissible. State v. Thomas
(1990), 61 Ohio St. 223, 232; State v. Williams (1996), 115 Ohio App.3d 24,44; State v. Parson (1990), 67 Ohio App.3d 201, 207. Therefore, testimony concerning police investigations is generally admissible even though it may involve descriptions of the accused's prior actions provided the probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evid.R. 403(A).
 {¶ 27} In the instant case, the evidence offered to explain the police investigation was not unfairly prejudicial. Unlike the evidence presented at the suppression hearing, there was no evidence offered at trial suggesting Bailey was the focus of a drug investigation. Rather, Dlugolinski testified that Bailey's green Bonneville was under casual, periodic surveillance because it was seen along with many other cars at locations of suspected drug activity. Dlugolinski explained he was "just monitoring the area on certain occasions." This evidence was necessary to explain why Dlugolinski followed the green Bonneville on the day Bailey was arrested.
 {¶ 28} Similarly, Dlugolinski's testimony that the pink house on Ottawa Avenue was also under surveillance for suspected drug activity in no way maligned Bailey's character but was offered merely to explain police investigative behavior.
 {¶ 29} Moreover, an investigation is not a prior act of the defendant. The only prior act Dlugolinski referred to in his testimony was the fact that Bailey parked his car at locations of suspected drug activity. The act of lawfully parking a car, in and of itself, is benign. A police decision to investigate all cars in a particular lot, for whatever reason, does not make the act of parking one's car in that lot prejudicial. Accordingly, the second assignment of error is without merit and is overruled.
 Timothy Sutton's Prior Testimony {¶ 30} In his third assignment of error, Bailey argues he was denied due process of law when the court allowed the prosecutor to read prior statements given by co-defendant Timothy Sutton. Bailey claims Sutton's prior statements could not be read during trial to refresh his recollection. The State argues the statements were properly read at trial as a recorded recollection exception to the hearsay rule under Evid.R. 803(5).
 {¶ 31} Evid.R. 803(5) provides:
"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
(5) Recorded recollection.
A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."
 {¶ 32} According to this rule, foundational requirements for the use of a past recollection recorded include a showing that: 1) the witness has insufficient memory to accurately testify to crucial information; 2) that the witness can show through his or her testimony that the past recollection recorded was made or adopted when the matter was fresh in the witness's memory; and 3) that the past recollection recorded correctly reflects the knowledge the witness had at the time it was recorded. See also, State v. Baston (1999), 85 Ohio St.3d 418. The staff notes relating to Evid.R. 803(5) specify:
"The rule makes explicit the requirement that the foundation for theintroduction of the statement under this exception must be made bytestimony of the witness himself. The assessment of trustworthiness isthereby focused upon the author and not upon some other person incidentto the event."
 {¶ 33} In the present case, all of the foundational requirements for Evid.R. 803(5) were met. Sutton stated several times that he could only "vaguely remember the incident." He explained that his illness "affects the mind." He also stated he could not remember whether he brought the heroin into Bailey's car or whether Bailey supplied the heroin. During cross-examination, Sutton explained: "I don't really remember. My memory is bad. I keep trying to tell everybody that, that I don't know." Thus, at the time of trial Sutton's memory was insufficient to accurately testify to crucial information.
 {¶ 34} Sutton's deposition was taken six months after Bailey's arrest. At the time of the deposition, Sutton testified he recalled the events of January 18, 2001. When Sutton later testified at trial, he explained that although he could no longer remember the events of that day due to his illness, he was sure his testimony at the time of the deposition was the truth. Thus, Sutton's own testimony both at the time of the deposition and at trial show that his deposition testimony was made when the events were still fresh in his memory and he was able to remember them.
 {¶ 35} Finally, because the deposition was taken under oath by an official court reporter, the deposition transcript correctly reflects Sutton's testimony and knowledge at the time it was recorded. Therefore, because all of the foundational requirements of Evid.R. 803(5) are met, we find the court did not err in allowing the testimony to be read at trial. Accordingly, the third assignment of error is overruled.
 Photographs {¶ 36} In his fourth assignment of error, Bailey argues he was denied due process of law and his right to present a defense when the court would not admit photos of the alleged scene.
 {¶ 37} Evid.R. 901 requires the authentication of evidence and states that "testimony that a matter is what it is claimed to be" is sufficient to authenticate it. Evid.R. 901(B)(1). To authenticate photographs, there is no need to call the individual who took the photographs. A witness with personal knowledge of the subject of the photograph may authenticate it by testifying that the photograph fairly and accurately depicts the subject at the time the photographs were taken. State v. Hannah (1978), 54 Ohio St.2d 84, 88.
 {¶ 38} Here, Bailey offered two photos of the pink house on Ottawa Avenue. Det. Clark identified the house from the photos on cross-examination, testifying as follows:
"Q: Detective, showing you these two photographs, Exhibits A and B, do you recognize what's shown in these photographs?
A: It would be the house on Ottawa, I believe.
* * *
Q: The red or pink house in Exhibit B, does that look like the house?
A: That's a pink house, yes.
Q: Pink. Is (sic) that look like the house we're talking about?
A: I would say so, yes."
 {¶ 39} The detective's testimony is sufficient to establish that the photos fairly and accurately depict the pink house on Ottawa Avenue. Therefore, these photos should have been admitted into evidence.
 {¶ 40} Having found that the trial court erred, we must determine whether this error is harmless. State v. Rahman (1986), 23 Ohio St.3d 146,150. It is appropriate to find error harmless where there is "either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction." State v. Ferguson (1983),5 Ohio St.3d 160, 166. See, also, Crim.R. 52(A) (harmless error defined as "any error, defect, irregularity, or variance which does not affect substantial rights * * *.")
 {¶ 41} Two police officers and the co-defendant testified that Bailey had heroin in his possession. The two police officers also testified that they saw large amounts of heroin being thrown from Bailey's car just before his arrest. They also testified that upon arrest, the police found heroin in Bailey's car and on his person. Based on the overwhelming evidence of Bailey's guilt, we find the court's error in excluding the two photographs was harmless beyond a reasonable doubt. Therefore, Bailey's fourth assignment of error is overruled.
 Charge on Failure to Comply {¶ 42} In his fifth assignment of error, Bailey claims he was denied due process of law because the court did not instruct the jury on all the elements of failure to comply. Specifically, Bailey argues the court should have charged the jury that in order to convict one of failure to comply the accused must fail to comply with a "lawful order or direction."
 {¶ 43} In count three of the indictment, Bailey was charged with failure to comply with an order or signal of a police officer pursuant to R.C. 2921.331(B). The indictment alleged that Bailey operated his motor vehicle "so as to willfully elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop." R.C. 2921.331(B) provides:
 {¶ 44} "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."
 {¶ 45} Bailey apparently claims the phrase "lawful order or direction" should be included as an additional element of the failure to comply offense even though the legislature did not include that language in the statute. However, R.C. 1.47 provides that in enacting a statute, it is presumed that the entire statute is intended to be effective. See,Van Dyne Crotty Co. v. Limbach (1990), 53 Ohio St.3d 3.
 {¶ 46} There is nothing ambiguous about the language contained in R.C. 2921.331(B). When viewed in comparison to R.C. 2921.331(A), it is clear the legislature never intended to include an element that the police signal or order be a "lawful order or direction" as evidenced by its omission from section B. By contrast, the legislature included this language in R.C. 2921.331(A) by making it a crime to "fail to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic." Therefore, because the language contained in R.C. 2921.331(B) does not include an element requiring that the accused fail to comply with a "lawful order or direction," we find no error in failing to include such language in the court's instructions to the jury. Accordingly, the fifth assignment of error is overruled.
 Amended Indictment {¶ 47} In his sixth assignment of error, Bailey claims he was denied due process of law when the court amended the indictment concerning failure to comply. In count three of the indictment, the specification alleged that "the operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." In the verdict forms given to the jury, the indictment was amended by including alternate findings of whether Bailey "was fleeing immediately after the commission of a felony and/or the operation of a motor vehicle by the defendant caused a substantial risk of serious physical harm to person or property." Bailey argues that because the indictment originally only included one specification, the court violated his constitutional rights by enlarging the indictment to include an additional possible finding.
 {¶ 48} Crim.R. 7(D) allows the court to amend an indictment in limited circumstances. Crim.R. 7(D) provides:
"The court may at any time before, during, or after trial amend theindictment, information, complaint, or bill of particulars, in respect toany defect, imperfection, or omission in form or substance, or of anyvariance with the evidence, provided no change is made in the name oridentity of the crime charged."
 {¶ 49} Here, the court did not change the name or identity of the crime charged. The crime charged remained failure to comply by fleeing and eluding. Because neither the name nor the identity of the crime changed in the amendment, such an amendment is permissible under Crim.R. 7. Accordingly, the sixth assignment of error is overruled.
 Specific Intent {¶ 50} In his seventh assignment of error, Bailey claims the court erred when it charged the jury on the definition of "purpose." Bailey argues the use of the word "gist" negates the instruction by "diluting" the requirement that Bailey act purposely. Bailey did not object to this instruction. Therefore, he has waived any error, unless the outcome of the trial clearly would have been different absent the instruction. Statev. Underwood (1983), 3 Ohio St.3d 12, at syllabus.
 {¶ 51} Jury instructions are within the trial court's discretion and will not be disturbed absent an abuse of discretion. State v. Guster
(1981), 66 Ohio St.2d 266, 271. In reviewing jury instructions on appeal, we must consider the specific charge at issue in the context of the entire charge, not in isolation. State v. Thompson (1987),33 Ohio St.3d 1, 13.
 {¶ 52} Bailey bases his argument on the holding in State v.Wilson, (1996), 74 Ohio St.3d 381, where the court held:
"Admittedly, the `gist of the offense' language is confusing in amurder prosecution which requires `purpose.' In the context of all theinstructions given the jury, the court provided adequate instructions onthe element of specific intent to kill. Given the evidence, includingWilson's confession, the jury could not have based its decision on the`gist of the offense' language. No `outcome-determinative' plain erroroccurred. We, therefore, reject proposition of law nineteen." (Citationsomitted).
 {¶ 53} Although the Wilson court found the "gist of the offense" language confusing, it found that in the context of all the instructions given to the jury, the instructions were adequate on the element of specific intent to kill. Wilson at 393.
 {¶ 54} R.C. 2901.22 defines "purposely":
"(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 55} In the present case, Bailey claims the following portion of the court's jury instruction "diluted" the definition of "purposely":
"When the central idea or essence or gist of the offense is a prohibition against or forbidding conduct of a certain nature, the person acts purposely if it is his specific intention to engage in conduct of that nature regardless of what he may have intended to accomplish by his conduct."
 {¶ 56} The portion of the transcript quoted above mirrors the statutory definition of "purposely." There is nothing about this portion of the charge that misstates the legal definition of "purposely." Moreover, prior to stating the above quoted language, the trial court stated: "A person acts purposefully when it is his specific intention to cause a certain result." It cannot be said that this instruction "diluted" or made it easier for the jury to find that Bailey acted purposely. Review of all the jury instructions as a whole indicates the court correctly instructed on the essential element of "purpose." Therefore, this assignment of error is overruled.
 Motion to Dismiss {¶ 57} In his eighth assignment of error, Bailey argues the possession of criminal tools charge should have been dismissed because there was no evidence that he used all the tools listed in the indictment for criminal purposes. Bailey also claims the court's charge erroneously instructed the jury that they only had to find that Bailey illegally possessed one criminal tool to sustain a conviction.
 {¶ 58} However, the State need only prove the illegal possession of one criminal tool to sustain a conviction under R.C. 2923.24. Statev. Hayley, Cuyahoga App. No. 74718, citing State v. McShan (1991),77 Ohio App.3d 781, 784. Upon review of the evidence in a light most favorable to the prosecution, this court concludes that the State produced sufficient evidence such that any rational trier of fact could have found the essential elements of the crime of possession of criminal tools, i.e., the use of the Pontiac Bonneville to transport drugs. Therefore, the court's instruction was proper and there was no basis for dismissal of this charge. Accordingly, the eighth assignment of error is overruled.
 Consecutive Sentences {¶ 59} In his ninth assignment of error, Bailey claims he was improperly sentenced to a consecutive prison term for his conviction for failure to comply.
 {¶ 60} Bailey was convicted of failure to comply pursuant to R.C.2921.331(B) because the jury found he violated this provision by fleeing and eluding the police. The court sentenced him pursuant to R.C. 2921.331(C)(5).
 {¶ 61} The court sentenced Bailey to a consecutive prison term pursuant to R.C. 2921.331(D), which provides:
"If an offender is sentenced pursuant to division (C)(4) or (5) of thissection for a violation of division (B) of this section, and if theoffender is sentenced to a prison term for that violation, the offendershall serve the prison term consecutively to any other prison term ormandatory prison term imposed upon the offender."
 {¶ 62} Bailey claims this provision is ambiguous because it is susceptible to at least two interpretations. Specifically, Bailey argues that while R.C. 2921.331(D) can be construed to require that the offender serve a prison term consecutively to any other prison term or mandatory prison term imposed on the offender, the statute can also be construed to apply to a sentence imposed in another case and not in the present case where the offender is being sentenced on several counts in the same indictment.
 {¶ 63} We find no merit to this argument. There is nothing ambiguous about R.C. 2921.331(D). There is nothing in the plain language of this statute to suggest in any way that consecutive sentences apply only in separate cases. Therefore, the ninth assignment of error is overruled.
 Possession of Heroin and Distribution of Heroin {¶ 64} In his tenth assignment of error, Bailey claims he was denied equal protection of the law based on the legislature's decision to impose a more stringent sentence upon those found guilty of possession of drugs as opposed to those found guilty of preparation of drugs for sale.
 {¶ 65} R.C. 2925.07 and 2925.11, which provide the penalties for possession of drugs and preparation of drugs for sale, do not expressly discriminate against any class of persons and are therefore facially constitutional. See State v. Bryant, 2nd Dist. No. 16809, 1998 Ohio App. Lexis 3308. All drug offenders are treated equally under these statutes. And Bailey does not claim to belong to any particular aggrieved or "suspect class." Thus, it is difficult to ascertain exactly how he claims his right to equal protection was violated.
 {¶ 66} Nonetheless, it is well established that a statutory classification that involves neither a suspect class nor a fundamental right does not violate the Equal Protection Clauses of the Ohio and United States Constitutions if the classification is rationally related to a legitimate governmental interest. See Klepper v. Ohio Bd. ofRegents (1991), 59 Ohio St.3d 131, 133.
 {¶ 67} Under this rational basis test, the statute must be upheld if it bears a rational relationship to a legitimate governmental interest. Adamsky v. Buckeye Local School Dist. (1995), 73 Ohio St.3d 360,361, 363. When the rational basis test is used, great deference is paid to the State. Conley v. Shearer (1992), 64 Ohio St.3d 284, 289.
 {¶ 68} As previously mentioned, R.C. 2521.07 and 2925.11 do not facially discriminate on the basis of any "suspect class" of persons. Because there is no fundamental right to possess drugs or to prepare drugs for sale, R.C. 2925.07 and 2925.11 are constitutional if they bear a rational relationship to a legitimate governmental interest. SeeAdamsky, supra.
 {¶ 69} In State v. Rogers, this court held:
"The State has a legitimate interest in protecting its citizens from the dangers of illegal drugs and from crimes of violence. It may serve this interest by enacting more severe penalties for drugs that it views as `particularly insidious.' * * * Legislation that creates distinctions need not be perfect; it need only bear a rational relationship to a legitimate governmental interest."
State v. Rogers, Cuyahoga App. Nos. 72736/72737; 1998 Ohio App. Lexis 2300. (Citations omitted). See also State v. Casalicchio, Cuyahoga App. No. 79431, 2002-Ohio-587, (holding that different sentencing provisions for possession of marijuana and distribution of marijuana for sale do not implicate equal protection or due process rights).
 {¶ 70} Therefore, because the legislature may enact disparate penalties for various drug offenses without violating equal protection or due process rights, Bailey's equal protection and due process rights were not violated. Accordingly, this assignment of error is overruled.
 Forfeiture of Property {¶ 71} In his eleventh assignment of error, Bailey claims that the court's forfeiture of the property identified in the possession of criminal tools count violated the double jeopardy clauses of both the Ohio and Federal Constitutions because it constituted an additional criminal penalty.
 {¶ 72} In support of this argument, Bailey relies on State v.Casalicchio (1991), 58 Ohio St.3d 178, wherein the Ohio Supreme Court set aside a forfeiture on double jeopardy grounds. In Casalicchio, the State's motion for forfeiture was not filed with the court until three days after the defendant was sentenced for the underlying offenses. However, in Casalicchio, the Ohio Supreme Court held that an order of forfeiture does not violate the double jeopardy clause if it is invoked prior to sentencing. Id. at 178.
 {¶ 73} Here, the court held a forfeiture hearing and signed an order of forfeiture on June 4, 2002, just before sentencing Bailey. Unlike the defendant in Casalicchio, Bailey was aware before sentencing that the State was pursuing the additional penalty of forfeiture as provided by R.C. 2933.41. Because the State properly sought forfeiture prior to sentencing, we find no violation of Bailey's constitutional rights against double jeopardy. Accordingly, the eleventh assignment of error is overruled.
Judgment affirmed.
TIMOTHY E. McMONAGLE, J. and ANTHONY O. CALABRESE, JR., J. concur.